People of the State of Illinois, Plaintiff in Error, v. Dwaine Lee Tadlock and Clayton Andrew Fivecoat, Defendants in Error.

Gen. No. 50,107.

First District, First Division.

May 24, 1965.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney of Cook County, Fred G. Leach, Assistant Attorney General, Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for plaintiff in error.

Norman Nelson, Jr., of Chicago, for defendants in error.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendants, Dwaine Lee Tadlock and Clayton Andrew Fivecoat, were indicted for the offense of possession of burglary tools with intent to enter a building and commit a theft therein. A pretrial motion to suppress certain evidence, on the ground that it was the product of an illegal search, was sustained. The State's direct appeal to the Supreme Court for a review of that order has been transferred here.

The hearing on the motion to suppress produced the following evidence. On September 4, 1963, at about 9:30 p. m. defendants were riding in an automobile owned and driven by Fivecoat when they were stopped at 2300 N. Pulaski Road by Chicago police officers, Bernard Sako and Ralph Moreth. The officers testified that they observed the defendant's car "in front of them and when it came to a stop, it was apparent that it had no brake lights."

Approaching the halted vehicle Moreth observed that the front license plate was missing; that an Illinois plate was affixed in the rear; and that the vehicle

sticker showed "void" * and was attached to the windshield with glue and scotch tape. Officer Sako asked Fivecoat for identification and he produced a valid Indiana driver's license. Fivecoat was informed by Sako that he would have to come to the station and post bond.** Moreth commented that the city vehicle sticker was improperly affixed, and Sako asked the driver for his vehicle registration. When Fivecoat opened the glove compartment to get the vehicle registration officer Sako noticed two open boxes of cartridges. He drew his revolver and ordered defendants from the car. A search of defendants produced several rounds of ammunition and a pocket knife.*** Upon a search of the vehicle by Moreth a loaded .38 caliber revolver and a sledge hammer were discovered under the passenger's seat of the car, and another loaded .38 caliber revolver was found under the driver's seat. Moreth's search of the rear of the vehicle produced a canvas bag containing tools, including a glass cutter and two crowbars two feet in length, which were the subject of the motion to suppress. Traffic tickets were issued for no brake lights, no Illinois driver's license, and no front license plate.

Based upon the foregoing circumstances the court sustained the motion, stating:

> The Court: In this case, the police officers properly stopped the vehicle operated by defendant Fivecoat when they observed that the vehicle did not have operating brake lights as it stopped at a traffic control signal. Other violations of the traffic code were then determined.

---

* Whenever this type of vehicle sticker is removed after having been initially affixed properly, the word "void" appears.

** Driver's licenses from other States cannot be accepted as bond for traffic violations. Posting of bond then takes place at a police station.

*** Tadlock denied possession of the bullets.

The place was a well lighted thoroughfare, the time 9:30 p. m. The purpose of travel at the time and place was explained. There is no evidence in the record that the police officers were likely to be attacked or that the defendants might attempt to escape. Neither was there evidence that the defendants were known to have a criminal background, or that they in any way fitted the description of individuals suspected in recently known crimes.

Considering all the evidence, including the observation of a box of cartridges in the glove compartment before the search, the mere possession of which is not an offense, I hold that the search following the arrest for a traffic violation was unlawful. . . .

The question presented for review is whether the search of defendants and their vehicle, as incident to a concededly valid arrest for traffic violations, was reasonable. Defendants contend that the reasonableness of a search must be determined by factors other than the lawfulness of the arrest. The State argues that a search of defendants and their vehicle was reasonably necessary for the protection of the arresting officers. Both rely in part on People v. Watkins, 19 Ill2d 11, 166 NE2d 433 (1960). There, the Supreme Court modified the rule that a search is legal if incidental to any valid arrest, and held that a lawful arrest for a minor traffic violation such as parking too far from a curb, or too close to a crosswalk would not by itself authorize a search of the driver and vehicle thus overruling contrary expressions in People v. Clark, 9 Ill2d 400, 137 NE2d 820 (1956) and People v. Berry, 17 Ill2d 247, 161 NE2d 315 (1959).

The Watkins rationale, subsequently adhered to in the cases of People v. Zeravich, 30 Ill2d 275, 195 NE2d

612 (1964) and People v. Thomas, 31 Ill2d 212, 201 NE2d 413 (1964) is that a search incident to an arrest is authorized only when it is reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping or to discover fruits of the crime, but that an offense—"the kind of minor traffic offense that ordinarily results in a 'parking ticket' hung on the handle of the door of the car, telling the offender that it is not necessary to appear in court if he mails in the amount of his fine . . . does not, in itself, raise the kind of inferences which justify search in other cases." But the court went on to state at page 19:

Some traffic violations would justify a search. The total absence of license plates for example, as in People v. Berry, 17 Ill2d 247 could reasonably suggest a serious violation of the law, as could an obscured license plate upon a car being driven in the early morning hours, as in People v. Esposito, 18 Ill2d 104.

In the recent decision of People v. Thomas, 31 Ill2d 212, 201 NE2d 413, the evidence indicated "that defendant's automobile was stopped by the police officers at 5:00 a. m. because one or both of his tail lights were not operating; that when asked for his driver's license he said he did not have one and he had just gotten out of jail; that the police then arrested him and searched his person and the automobile; and that the search produced several packages of narcotics from defendant's person and one package from under the front seat of the car." Such circumstances were held sufficient to justify the police officers in searching defendant and the area under the front seat for their own protection before taking him to the police station for the traffic offenses. In People v. Zeravich, 30 Ill2d 275, 195 NE2d 612, police officers stopped de-

■■■■■■■■■■

fendant's vehicle and issued a traffic citation to him for driving with obstructed vision. In the course of ascertaining defendant's identity and fitness to drive, the officers noticed that defendant's clothing matched that of a person suspected of committing crimes in the vicinity. On the foregoing evidence the Supreme Court held that after a necessarily quick appraisal of the facts known to them, the officers could reasonably conclude that they might not be facing a traffic law violator, but a dangerous criminal and thus, that it was clearly reasonable for them to search the defendant to insure their own safety and to foreclose the possibility of an attempted escape.

■ ■ It has been stated on numerous occasions that the constitution prohibits only unreasonable searches, and permits those that are reasonable. The critical issue in each case is whether the situation confronting the officer justified the search. The legality of a search is to be determined not by its results, but by the standard of reasonableness of the conduct of the officers in light of all the circumstances. "Police officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals." People v. Watkins, 19 Ill2d 11, 19, 166 NE2d 433.

■ With the above principles in mind we must determine whether in the instant case the circumstances made it reasonable for the arresting officers to assume that they were dealing with a situation more serious than routine traffic violations. People v. Zeravich, 30 Ill2d 275, 195 NE2d 612; People v. Thomas, 31 Ill2d 212, 201 NE2d 413. In so doing, we are not called upon to consider the validity of the search as incident to an arrest for traffic violations alone, since the officers observed open boxes of cartridges in the glove compartment of the automobile. Defendants'

486

suggestion, therefore, that People v. Watkins, 19 Ill2d 11, 166 NE2d 433, and People v. Faginkrantz, 21 Ill2d 75, 171 NE2d 5 (1960) implying that the reasonableness of a search must be determined by factors other than the lawfulness of the arrest need not be considered since the circumstances here justified the search of defendants and the vehicle on the basis that the officers could properly assume that they were dealing with a situation more serious than routine traffic violations.

We think it beyond dispute that protection of arresting officers from attack is one of the grounds that makes a search of a person a lawful incident to a valid arrest. In the instant case the arresting officers had properly determined that several traffic violations were involved, and had informed the driver of the automobile that he was required to post bond at the police station since his valid Indiana driver's license could not be used for that purpose.

Having observed the various traffic offenses the officers approached the situation with caution and prudence. All too often face-to-face confrontation of traffic offenders, particularly where they are detained or, as here, diverted to the police station, results in loss of life to the officers. While it is true that a great majority of arrests for traffic offenses result in no untoward incidents, here, more than routine or minor traffic violations had occurred. Under the circumstances the safety and protection of the arresting officers justified the search of defendants and the immediate area about them before defendants were taken to the police station.

A search of the front seat produced two loaded .38 caliber revolvers, one under the driver's seat occupied by Fivecoat, and the other under the passenger's seat occupied by Tadlock. Having determined the character of the men, it was proper for the officers to carry

the search to the back seat, where the burglary tools were discovered. While the results of such a search cannot determine its reasonableness, the very fact that weapons were recovered incident to a lawful arrest, is itself the most persuasive reason for permitting arresting officers to search prisoners before taking them to the police station. Where, as here, the undisputed evidence disclosed that the officers observed open boxes of cartridges in the glove compartment of the automobile, it was imperative that the officers act as they did.

Tadlock, as passenger, contends that the traffic violations and the fact that cartridges were viewed by the officers did not justify a search of his person. Defendants did not attempt to suppress any evidence seized from Tadlock but only that found in the rear seat of the automobile owned by Fivecoat. Consequently, Tadlock cannot complain of a search and seizure of any of the items taken from the vehicle.

As the burglary tools, which were the subject of the motion to suppress, were discovered by a reasonable search incident to a lawful arrest, the order of the trial court sustaining defendants' motion to suppress is hereby reversed and the cause is remanded with directions to overrule the motion to suppress the evidence.

Reversed and remanded with directions.

BURMAN, P. J. and MURPHY, J., concur.