STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RICHARD HOCK, DEFENDANT-APPELLANT.

Argued September 8, 1969—Decided October 20, 1969.

*Mr. Thomas Menchin,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. William J. Cunnane,* Assistant Prosecutor, argued the cause for respondent (*Mr. James A. Tumulty, Jr.,* Prosecutor of Hudson County, attorney).

The opinion of the court was delivered by

FRANCIS, J. Defendants Bird and Hock were convicted on an indictment charging them with unlawfully carrying "concealed in a vehicle, to wit, an automobile, a certain firearm, to wit, a revolver, without first having obtained the requisite permit to carry same, contrary to the provisions of *N. J. S. A.* 2A:151–41." Hock alone appealed to the Appellate Division where in an unreported opinion the conviction was affirmed. Thereafter he appealed directly to this Court under *R. R.* 1:2–1(a), now *R.* 2:2–1(a) (1), alleging that constitutional and other trial errors require reversal.

The statute under which the charge was laid provides:

"Except as hereinafter provided, any person who carries, holds or possesses in any automobile * * *:
(a) A pistol or revolver without first having obtained a permit to carry the same in accordance with the provisions of this chapter;
* * * * * * * *
is guilty of a high misdemeanor."

*N. J. S. A.* 2A:151–41.
*Section* 7 thereof, 2A:151–7, says:

"The presence of a firearm * * * in a vehicle, is presumptive evidence of possession by all persons occupying the vehicle at the time."

Prior to 1966 the form of the statute was somewhat different. It forbade any person to carry a revolver "in an automobile * * * or concealed on or about his clothes or person, or otherwise concealed in his possession: (a) * * * without first having obtained a permit * * *." The change in the act is called to the prosecutor's attention because the indictment used here follows an old form in that it asserts that Hock "unlawfully carried concealed in a vehicle, to wit, an automobile, a certain firearm, etc." There is no longer any need to allege concealment, if in fact there ever was any such need.[1] Moreover in its charge the court read the old statute and advised the jury that the State had the burden of proving beyond a reasonable doubt that the gun was concealed in the automobile in which Hock was a passenger. The allegation of

---

[1] The act in its earlier form prohibited the carrying of a revolver, pistol or assorted other weapons concealed about the accused's clothes or person, without a permit to do so. See, e. g. L. 1912, c. 225. Under that statute it was necessary to allege in the indictment and to prove that the weapon was "concealed." *State v. Gratz*, 86 *N. J. L.* 482 (*Sup. Ct.* 1914). Subsequent revisions of the statute referred to vehicles by prohibiting the carrying of the specified weapons "concealed in or about his clothes or person, or in any automobile * * *." *L.* 1925, c. 207. Two cases held that allegation and proof of concealment were required under that language but neither clearly dealt with carrying in an automobile. *State v. Meyers*, 9 *N. J. Misc.* 1174, 157 *A.* 96, aff'd 110 *N. J. L.* 527 (*E. & A.* 1933) ; *State v. Quinn*, 108 *N. J. L.* 467 (*Sup. Ct.* 1932). In any event, in 1928, the statute was amended to read: "No person shall, without license therefor issued, * * * carry a pistol or revolver in any vehicle or concealed on or about his person * * *." *L.* 1928, c. 212. Manifestly, the reference to concealment in that act related only to carrying the weapon concealed on or about the accused's person, and was not intended to require concealment in the vehicle as an element of the crime. It is extremely doubtful that the somewhat less clear form of the statute, *N. J. S. A.* 2A:151–41, just before the 1966 amendment, was designed to change the plain prohibition of the 1928 act or that the clause in that same statute banning the carrying of a revolver "in any automobile * * * or on or about his clothes or person, *or otherwise in his possession* * * *" should have been deemed to do so. The question has never been decided expressly. It was raised and reserved in *State v. Rabatin*, 25 *N. J. Super.* 24, 30 (*App. Div.*), certif. den. 13 *N. J.* 361 (1953), and see *Livesey v. Helbig*, 87 *N. J. L.* 303 (*E. & A.* 1915).

concealment in the indictment being unnecessary, it could have been treated as surplusage at the trial. Furthermore, the court by imposing in its charge the duty to prove concealment laid a greater burden of proof on the State than was necessary. But the defendant made no complaint about either the indictment or the charge, and we do not see that he was prejudiced in any way.

The testimony adduced at the trial showed that on January 8, 1967 at about 3 A.M. Officer Ferolie of the Jersey City Police Department while on motorcycle patrol, observed a 1956 Cadillac turning from one street into another street at about five miles an hour. Its trunk lid was loose and banging up and down and the exhaust or muffler noise was very loud. Two men were in the car, Bird was driving and Hock was in the right front passenger seat. At Officer Ferolie's direction, Bird pulled over to the side of the road where production of his driver's license and registration was requested. The driver's license was in order. However, the car registration certificate had expired. Moreover, although the number on the certificate was the same as that on the license plates, the registration was for a different automobile, a 1955 or 1956 Oldsmobile. In view of the motor vehicle act violations as well as the officer's suspicion that the Cadillac might be a stolen vehicle, he ordered Bird and Hock to drive to the precinct headquarters. Ferolie followed the car a short distance to the rear. On the way he saw Hock, who was in the right front seat, bend forward toward the floor for a period he estimated variously at from 3 to 7 seconds. (In cross-examining on the pretrial motion to suppress, counsel for Hock asked the officer if any thought crossed his mind when he saw Hock bend over. On receiving an affirmative answer counsel inquired as to what it was, and the officer replied that he thought something was being put under the front seat.)

On arrival at the police station with Bird and Hock, Ferolie explained the situation to the desk sergeant who told him to impound the Cadillac so that the matter of ownership

could be explored. Ferolie then took Bird outside with him while he searched the car and inventoried its contents. Such inventory is routine procedure so that a record of the contents may be made in the presence of the alleged owner. On opening the right front door the officer saw a revolver on the floor a few inches from the door and partially protruding from under the right front seat. It turned out to be a loaded .38 caliber revolver. Bird testified he saw the gun about the same time as Ferolie did. But each defendant denied ownership of it, or that he put it in the car or knew it was there, or that he ever saw it before it was found in the car.

Both men were then charged with unlawfully carrying the revolver concealed in a vehicle in violation of *N. J. S. A.* 2A:151-41. In addition Bird was given summonses for driving an unregistered vehicle contrary to *N. J. S. A.* 39:3-4, misuse of license plates contrary to *N. J. S. A.* 39:3-35. driving with a muffler not in working order, violative of *N. J. S. A.* 39:3-70, and failing to report a change of address contrary to *N. J. S. A.* 39:3-36.

At trial, Hock (whose credibility was assailed because of previous criminal convictions in 1961 for breaking and entry, and in 1963 for robbery) continued his denial that he owned the revolver or carried it into the car, or knew it was under the right front seat he occupied, or that he put it under the seat. He testified, as did Bird, that they had given a lift to a stranger they met outside the Old Bay House Tavern, not far from the scene of their arrest, and that they had dropped him off just before they were stopped by Officer Ferolie. Hock's uncle, with whom Hock lived near the tavern, testified to his own presence in the tavern from about 7 P.M. until closing time. He offered some corroboratory statements, asserting that when he left the tavern at closing time other persons, one of them Bird, left also. Another such person was a stranger with whom he had played pool at the tavern on a few occasions. He did not know the person's name or where he lived, and he never saw him again after that night. While waiting on the sidewalk for the bartender to close up, the

uncle saw Hock walking toward him. Hock's purpose in coming to the tavern was to obtain a key from his uncle so that he could get into the house. Hock and Bird, who were friends, after some conversation decided to go to a restaurant for coffee. At this time the stranger mentioned was across the street waiting for a bus. The uncle said he asked the man if he wanted a lift since Hock and Bird were going his way. Everyone being agreeable, the stranger got into the rear seat of the car. Neither Hock nor Bird asked for his name or where he lived; he simply said he would let them know where they "could let him off." They claimed they discharged him at Merritt Street at his request, and that he was about 30 feet away when Officer Ferolie drew up alongside them. According to Hock the officer asked who the person was who had just gotten out of the car. Ferolie denied seeing anyone alight or that he made any such inquiry. His testimony was that the car was moving when he ordered Bird to pull into the curb, and that the only occupants were Bird and Hock.

Hock denied he put the revolver under his seat after the arrest and during the trip to police headquarters. He remembered having bent forward at one time but said that was only to put some cigarette ashes in the dashboard tray.

The jury obviously disbelieved the defense. A unanimous verdict of guilty was returned after a short period of deliberation.

## I

Hoch claims that the revolver received in evidence against him at the trial was obtained as the result of a search and seizure which violated the Fourth Amendment of the Federal Constitution. The argument was first presented at a pretrial motion under R. 3:5–7(a) to suppress on the ground that there was no probable cause for the search and, in any event, a warrant should have been obtained before making the search and seizing the revolver. The motion was denied after hearing the testimony of Officer Ferolie which was substantially the same as that presented at the trial. We

agree, as did the Appellate Division, that the contention has no merit.

Evidence obtained by means of searches and seizures made without a search warrant is not suppressible in all cases. The Fourth Amendment condemns only such warrantless searches as are unreasonable. *State v. Campbell,* 53 *N. J.* 230 (1969) ; *State v. Kasabucki,* 52 *N. J.* 110 (1968) ; *State v. Boykins,* 50 *N. J.* 73 (1967).

On the basis of the police officer's reasonable belief that the noisy muffler on the car violated the Motor Vehicle Act, he was legally justified in ordering Bird to pull into the curb and then requesting production of his driver's license and vehicle registration certificate. *State v. Campbell, supra; N. J. S. A.* 39 :3–29. When no registration certificate for the Cadillac was produced, and it appeared that the license plates on the car related to a different vehicle, a well-grounded suspicion that the car was stolen warranted arrest of its occupants. See *N. J. S. A.* 39 :5–25. Search of the vehicle for evidence of ownership could have been made immediately at the scene. *State v. Boykins, supra; United States v. Washington,* 249 *F. Supp.* 40 (*D. D. C.* 1965), aff'd *Washington v. United States,* 130 *U. S. App. D. C.* 374, 401 *F. 2d* 915 (1968) ; *People v. Shapiro,* 213 *Cal. App. 2d* 618, 28 *Cal. Rptr.* 907 (1963) ; *People v. Galceran,* 178 *Cal. App. 2d* 312, 2 *Cal. Rptr.* 901 (1960) ; *People v. Sanson,* 156 *Cal. App. 2d* 250, 319 *p. 2d* 422 (1957) ; *People v. Thomas,* 31 *Ill. 2d* 212, 201 *N. E. 2d* 413 (1964), *cert.* den. 380 *U. S.* 936, 85 *S. Ct.* 948, 13 *L. Ed. 2d* 824 (1965) ; *People v. Tadlock,* 59 *Ill. App. 2d* 481, 208 *N. E. 2d* 100 (1965) ; *State v. Sullivan,* 65 *Wash. 2d* 47, 395 *p. 2d* 745 (1964). Instead of an on the scene search, it was not only proper, but sensible as well, to arrest Bird and Hock and order them to drive to police headquarters, especially since it was 3 A.M. and the officer was alone.

On arrival at police headquarters there was ample basis for detaining the men and impounding the car pending investigation of its possible theft. *Cf. Pine v. Okzewski,* 112

*N. J. L.* 429 (*E. & A.* 1933). Even the Director of the Division of Motor Vehicles may authorize the seizure of a motor vehicle operated over the highways of this State when he has reason to believe that it has been stolen or is otherwise being operated under suspicious circumstances, and may retain it until ownership is established. *N. J. S. A.* 39:5–47. We see no logical or legal reason why a delay of the few minutes it took to drive to the place of impounding should wipe out the right to search the car without a search warrant for evidence of true ownership, when that right so clearly existed in terms of probable cause at the scene of the arrest. See *State v. Fioravanti,* 46 *N. J.* 109, 124 (1965), *cert.* den. *Fioravanti v. New Jersey,* 384 *U. S.* 919, 86 *S. Ct.* 1365, 16 *L. Ed. 2d* 440 (1966); *State v. Blanca,* 100 *N. J. Super.* 241, 251 (*App. Div.* 1968).

When Officer Ferolie went out to the impounded car accompanied by Bird, the alleged owner, the propriety of the search need not depend, as the State suggests, only on whether the search was incidental to the arrest. Possible larceny of the car or operation without the permission of the owner being reasonably in issue, probable cause existed to search it for evidence of true ownership. Moreover, as the United States Supreme Court indicated in *Cooper v. California,* 386 *U. S.* 58, 87 *S. Ct.* 788, 17 *L. Ed. 2d* 730 (1967), where the car was lawfully impounded during a reasonable period of investigation, it would be unreasonable to say the police had no right to search it, even for their own protection. "It is no answer to say that the police could have obtained a search warrant, for 'the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.'" 386 *U. S.,* at 62, 87 *S. Ct.,* at 791. In taking Bird out with him to go through the car, the officer had two motives, one stated expressly and the other clearly inferable, but both in our judgment lawful. One was to inventory its contents to protect the police against excessive claims and to safeguard the suspect's

rightful interest therein; the other stemming by clear implication from the reason for the impounding, *i. e.*, the suspicion of theft, was to note or discover any evidence of true ownership.

When the officer opened the right front door of the car, it is undisputed that the revolver, or enough of it to reveal that it was a revolver, was capable of being seen and was seen by Bird as well as Ferolie a few inches away from the door and under the right front seat where Hock had been sitting. Bird testified he saw it at the same time as the officer.

The presence of the gun in association with the 3 A.M. operation of an unregistered vehicle bearing license plates which had been issued for a different car and for a term which had expired warranted an inference by the officer that the gun was contraband and that the occupants of the car for which they could produce no registration were involved in some criminal enterprise. *Compare, State v. Humphreys,* 54 *N. J.* 406 (1969); *State v. Barnes,* 54 *N. J.* 1, 8 (1969); *State v. DiRienzo,* 53 *N. J.* 360, 385 (1969); *State v. McKnight,* 52 *N. J.* 35, 56 (1968); *State v. Boykins, supra,* 50 *N. J.,* at 77–78; *Harris v. United States,* 390 *U. S.* 234, 88 *S. Ct.* 992, 19 *L. Ed. 2d* 1067 (1968); *Goodwin v. United States,* 121 *U. S. App. D. C.* 9, 347 *F. 2d* 793 (1965), *cert.* den. *Williams v. United States,* 382 *U. S.* 920, 86 *S. Ct.* 300, 15 *L. Ed. 2d* 234 (1965); *People v. Galceran, supra; State v. Sullivan, supra.* The search of the car being lawful, the seizure of the gun was lawful and unaffected by the absence of a search warrant. Validity of the seizure of the gun did not depend upon the fact that it was partially visible when the door was opened. Its visible presence gave additional substance to the right of seizure, but under the totality of the circumstances the seizure would not have been constitutionally infirm if the gun had not been visible but had been discovered in the course of a search of the car.

## II

The defendant contends further that since *N. J. S. A.* 2A: 151–41 prohibits carrying, holding or possessing a revolver in an automobile without "first having obtained a permit" to do so, the burden is on the State to affirmatively show absence of a permit as a part of its main case.

The statute makes carrying, holding or possessing a revolver in an automobile a high misdemeanor "except" where the person charged with the offense has previously obtained a permit to do so. The clause which exempts from its penal provision those persons who have been licensed is so incorporated into and made a part of the description of the offense that doubtless it should be considered necessary to allege in the indictment, as was done here, that Hock was without a permit to carry the revolver. But that allegation presents a negative which, under earlier cases, the prosecution was not called upon to prove in the first instance. As the cases indicate it was thought that the truth or falsity of the averment was more immediately or peculiarly within the knowledge of the defendant himself, or that the negative did not admit of direct proof. There was no central agency or office in the State where all gun permits granted under the statute had to be filed. Permits were issued by judges of the county court where the permittee resided at the time of application. Although there is no section of the statute expressly requiring permits to be filed and a record kept in the clerk's office of the same county, the implication is that such filing did occur. See *N. J. S. A.* 2A:151–44. So, if the prosecutor had to prove lack of a permit in the first instance, in a particular case he might have to search the records of many county clerk's offices, perhaps even all 21 of them, in an effort to make a *prima facie* case against an accused. Consequently our courts felt, as did those of a number of other states, that if a permit had been issued to a defendant the fact would be more immediately within his knowledge. Therefore it was held that there was no hardship or injustice in

placing upon him the slight intermediate obligation of presenting such evidence. Thus, upon a showing of possession of the type of gun which could not be legally possessed without a permit, a duty of going forward with some evidence of the holding of a permit was imposed on the accused. However, this did not alter the basic rule that the ultimate burden of persuasion rested on the State. *State v. Blanca,* 100 *N. J. Super.* 241, 248 (*App. Div.* 1968); *State v. Rabatin, supra,* 25 *N. J. Super.,* at 31; *People v. Ross,* 60 *Cal. App.* 163, 212 *P.* 627 (1922); *People v. Grass,* 79 *Misc.* 457, 141 *N. Y. S.* 204 (*Cty. Ct.* 1913); 29 *Am. Jur. 2d, Evidence,* § 153; 9 *Wigmore, Evidence* (3d ed. 1940), § 2486, *p.* 275.

In this case defendant's contention respecting the proper allocation of the burden of proof of lack of a gun permit requires no further discussion. It is plain from the jury opening of defense counsel, as well as from the testimony offered in the State's case as to the denials by the defendants of ownership, possession and knowledge of the presence of the revolver in the car, that the non-existence of a permit to possess or carry the gun was not an issue in the case. The nature of the defense testimony, as well as the summations of counsel, was such as to confirm the absence of such issue, and in our view the trial court was justified in its charge in removing it from jury consideration. The case was properly submitted to the jury in the framework of the trial contest for a finding of guilt or innocence on the realistic and actual issues presented by the defendants. Accordingly we see no justification for reversal of the conviction because of lack of proof that Hock did not have a gun permit.

III

Defendant claims the trial court committed prejudicial error in its charge to the jury by referring to *section 7* of Title 2A:151 which speaks of presence of a revolver in an automobile as "presumptive evidence" of possession by an occupant thereof. In explaining the statute the court did so in

the exact language of a request to charge submitted by the defendant Bird. As charged, this request told the jury that if the occupants had no knowledge of the presence of the weapon in the automobile there could not be a conviction. The court advised the jury also that in order to convict under the statute referred to in the indictment, *i. e., N. J. S. A.* 2A:151–41, the State must prove every element of the offense beyond a reasonable doubt. There was no objection to the portion of the charge of which Hock now complains. Therefore the ground of appeal will not be considered unless it qualifies as plain error, that is, legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result. *State v. Corby,* 28 *N. J.* 106, 108 (1958), overruled on other grounds, 44 *N. J.* 560 (1965).

In this case there was strong evidence connecting Hock with possession of the revolver found in the car. He was occupying the right front seat of the car as it proceeded toward police headquarters. The officer following him saw Hock bend forward for an appreciable period of time and then straighten up in his seat. When the right front door was opened a few minutes later the revolver was observed on the floor partly under the right front seat and within a few inches of the right front door. These facts warrant a substantial inference that Hock had possession of the gun, *i. e.,* had intentional control and dominion over it. *State v. Humphreys, supra,* 54 *N. J.,* at 413–414. As *Humphreys* indicates, such an inference is rational and not arbitrary. Of course, it is permissive, not mandatory, and, as the trial judge indicated, the jury was free to accept or reject it after a consideration of all the evidence.

The inculpatory inference was strengthened rather than diluted by the testimony of Hock and Bird. The story they told about giving the stranger a lift in the rear seat of the car for a short distance and dropping him almost immediately

before the officer accosted them was implausible. Its purpose was to create an inference that the stranger had put the gun in the car, and to negative the inference of Hock's possession. The jury quite obviously believed the stranger was born of desperation and imagination and not of truth, and so indicated by its verdict. In our judgment the great weight of the credible evidence supports the jury finding that Hock had knowing possession of the gun.

Under the circumstances, and although the charge of the court did not comport strictly with the views of this Court expressed in *State v. DiRienzo, supra,* and *State v. Humphreys, supra,* both decided after this case was tried, we cannot say Hock has shown such grievously prejudicial error as to warrent reversal of his conviction. For guidance, however, we commend the two cited cases to the trial judges for close study in connection with preparation of future jury instructions in such cases.

Judgment affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.