122 N.J. Super. 463 (1973)
300 A.2d 860
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES WILBELY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 4, 1972.
Decided February 21, 1973.
*464 Before Judges FRITZ, LYNCH and BARRETT.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. John H. Ratliff, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Joseph D.J. Gourley, Passaic County Prosecutor, attorney for respondent (Mr. Gary H. Schlyen, Assistant Prosecutor, of counsel).
The opinion of the court was delivered by FRITZ, J.A.D.
Defendant was convicted, after jury trial, of breaking and entering with intent to steal (N.J.S.A. 2A:94-1). On this appeal he claims refusal of his offer to prove his financial resources in order to disprove an intent to steal was error. Additionally, he asserts as plain error complaints about the charge.
*465 Neither the State nor defendant has brought to our attention any New Jersey precedent determining the question of the admissibility of testimony relating to financial resources designed to contradict an intent to steal, nor have we found any. State v. Smith, 32 N.J. 501 (1960), cert. den. 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961), escaped a determination of the problem. State v. Mathis, 47 N.J. 455 (1966), treats with the converse and declares the inability of the State to prove financial need as motive for robbery. We cannot here say beyond a reasonable doubt that if the exclusion below was error, it was harmless, so we must resolve the problem.
As related in Smith, supra, Professor Wigmore supports admissibility on the basis of relevancy, i.e., possession of money tends to negative a desire to obtain money by crime. 2 Wigmore, Evidence (3 ed. 1940), § 392 at 343. Interestingly, Wigmore also finds poverty relevant to the commission of a crime but declares this inadmissible for reasons of fairness, presumably to the defendant. With respect to the admissible affluence, Wigmore distinguishes from inadmissible poverty on the basis of "the foregoing objection [possible unfair prejudice] not being here applicable." Were the sole consideration fairness to the defendant, we would agree. But it seems to us that as evidence of poverty might well "prove too much against too many" (Mathis, supra, 47 N.J. at 471), evidence of affluence might well result in a proving of too little against too few, and this to the very real detriment and prejudice of fair law enforcement.
With Wigmore we have no doubt of some relevance with respect to both poverty and affluence. Mathis concedes that, "Undoubtedly a lack of money is logically connected with a crime involving financial gain." (47 N.J. at 471.) History has taught that some poor steal for the sole purpose of rectifying that economic condition. Nor do we have any doubt at all that scoundrels exist whose larcenous propensities are restrained solely because affluence overcomes a running of the risks involved.
*466 But it is equally evident, it seems to us, that there exist the honest poor as well the thieving wealthy. This being so, the matter becomes one of weighing the utility of the relevant aspects of the evidence, either of affluence or poverty, against reasons opposing admissibility, principally such as the likelihood of improper inferences being drawn, the opportunity for personal prejudices to be manifested, or, most significantly, the expansion of the fact issues to be tried, and this into an area where exculpating perjury might well be hard to disprove.
We believe that only after such a weighing and a considered initial determination in favor of admissibility from that weighing should that which Professor Wigmore calls "unfair prejudice" be considered as an exclusionary factor.
Perhaps this is what he suggests. But it would appear rather that admissibility is assumed from bare-bone relevancy, and only "unfair prejudice" prevents admission of evidence of poverty. With recognition that our Evidence Rule 7(f) is far reaching with respect to evidence in anywise relevant, and with a nod to the school which argues that only questions of weight, and not admissibility, exist after a determination of relevance, we record our disagreement that relevance mandates admissibility. As Evidence Rule 4 remains to assist the trial judge in excluding relevant evidence which for one good reason or another ought not to be considered by the factfinder, the phrase "by other law of this State" in the prefatory statement of Evidence Rule 7 enables us to determine those instances where evidence concededly relevant should not be admissible nevertheless, for one good reason or another.
In the specific context of the error here urged, we have undertaken the weighing process described above, and we conclude that in addition to the reasons bespeaking nonadmissibility mentioned above, evidence of affluence, while possibly relevant to negate an intent to steal, should not be admissible on account of the likelihood of the involvement of collateral concerns. Examples can be carried to an extreme: *467 if a defendant is allowed to prove equity in improved real estate, how far can the State go to show that there is little cash to meet the mortgage payments to protect that equity? May defendant then demonstrate accounts receivable and the liquidity of his debtors to refute the prosecutor's implications? And so on.
Further we incline to the view suggested above that even if evidence of affluence were otherwise admissible, it should be excluded on account of unfair prejudice to the State, whose rights and those of the people it represents are also entitled to protection, in the same manner as unfair prejudice to the defendant produced the Mathis exclusion.
We hold that evidence of the possession of money is not admissible to disprove intent, and that the exclusion below of such evidence was not error.
Nor do we find plain error in the following impugned portion of the judge's charge:
After a consideration of all the evidence, if you are satisfied beyond a reasonable doubt that this defendant was not guilty of the crime charged, it is your duty to acquit him by returning him a verdict, finding him not guilty.
Quite obviously this statement is glaringly erroneous. But in the context of the whole charge, it appears as an inadvertence that we are satisfied had no capacity to influence the result to defendant's detriment. From the whole charge it was made abundantly clear to the jury that the State had a continuing burden of proving defendant guilty beyond a reasonable doubt, and that nothing less than a sustaining of this burden would justify a conviction.
The other complaint relating to the charge, however, is meritorious, and warrants reversal.
The store which was entered in the crime here involved had a vestibule or an alcove leading to the door for entry. Defendant took the stand and testified he was in that vestibule, but not in the store, when the police arrived. He *468 testified he was preparing to enter the store to buy cigarettes when the police started shooting and he "took off down the street." It was within the framework of this testimony that the judge charged the jury, in defining an entering:
* * * an entry is accomplished if any part of the body and arm, a hand, a finger or a foot or even an instrument was inserted into the building or space. [Emphasis supplied.]
The proscription of N.J.S.A. 2A:94-1 against unlawful entry into a building, structure or room means precisely what it says. We do not conceive this to embrace entry into an areaway in front of the door leading to a building, structure or room, at least in circumstances such as those here where that areaway could not conceivably have been a locus for the intended further unlawful activity.[*]
But when the judge below included the words "or space" in the portion of the charge quoted above, he unquestionably and erroneously enlarged the proscription of the statute to include the vestibule.
The State does not contest this hypothesis. It argues instead from the facts that since the State's case was totally predicated upon the presence of two negro males in the store, who were seen to bolt out of the door from within the store, the jury was "sufficiently appraised [sic] of the need to find an interior entry in order to return the guilty verdict," and there was no plain error.
We disagree. We cannot say beyond a reasonable doubt that the jury might not well have understood the judge to mean presence in the alcove constituted an entering, and thus to have warranted defendant's conviction on his own testimony. Such is the warp and woof of a "clear capacity *469 to bring about an unjust result." State v. Hock, 54 N.J. 526 538 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
Reversed and remanded for a new trial.
NOTES
[*] We leave to the proper case such questions as are raised by an intent to pilfer goods stored in such an area or there to rape an occupant.