NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0857-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JEROME WILLIAMS, a/k/a
JEROME K. WILLIAMS,

 Defendant-Appellant.
__________________________________

 Submitted March 29, 2017 – Decided April 21, 2017

 Before Judges Accurso and Lisa.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Indictment No.
 14-06-0687.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Kevin G. Byrnes, Designated
 Counsel, on the brief).

 Andrew C. Carey, Middlesex County Prosecutor,
 attorney for respondent (Susan Berkow, Special
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM
 Defendant was charged in a two-count indictment with third-

degree possession with intent to distribute cocaine, N.J.S.A.

2C:35-5a(1), and N.J.S.A. 2C:35-5b(3) (Count 1), and third-degree

possession of cocaine, N.J.S.A. 2C:35-10a(1) (Count 2). The jury

found defendant guilty of possession of cocaine and not guilty of

possession with intent to distribute cocaine. Defendant filed a

post-trial motion for acquittal or a new trial. The motion was

denied, and defendant was sentenced to five years imprisonment.

Defendant argues on appeal:

 POINT I

 THE DEFENDANT IS ENTITLED TO A NEW TRIAL
 BECAUSE THE TRIAL COURT'S INSTRUCTION THAT THE
 CO-DEFENDANT'S STATEMENT (EXONERATING HERSELF
 AND IMPLICATING THE DEFENDANT) IS SUFFICIENT
 ALONE TO PROVE THE STATE'S CASE BEYOND A
 REASONABLE DOUBT WAS ERRONEOUS AND
 PREJUDICIAL. (Not Raised Below)

 POINT II

 THE DFEENDANT'S MOTION FOR JUDGMENT OF
 ACQUITTAL SHOULD HAVE BEEN GRANTED.

 POINT III

 THE SENTENCE IS EXCESSIVE.

We reject these arguments and affirm.

 On March 22, 2014, East Brunswick Police Officer Jason Fama,

while on patrol, observed a vehicle with a male driver and female

passenger. Fama ran a computer search of the vehicle and learned

 2 A-0857-15T2
that the registered owner, Theresa Foxx, had a suspended driver's

license and was the subject of an active warrant for $250 in unpaid

parking tickets. As part of the computer search results, a

photograph was displayed on Fama's screen which revealed that Foxx

was the passenger in the car.

 Fama effected an uneventful stop of the motor vehicle.

Defendant, Jerome Williams, was the driver. As Fama approached

the vehicle, he noted that the two occupants were speaking to each

other. He requested the production of defendant's driver's license

and the vehicle registration. Foxx handed documents pertaining

to the vehicle to defendant, who handed them over to Fama.

Defendant said he did not have a valid driver's license. However,

he indicated that he did have a New Jersey identification card,

which Foxx handed to him and which he gave to Fama. Dispatch then

confirmed to Fama that defendant's driver's license was suspended.

Because Foxx was going to be arrested, Fama requested back-up, and

another officer soon arrived at the scene.

 Fama advised Foxx that she was being placed under arrest and

searched her incident to arrest. While doing so, he asked her if

she had anything on her person that she shouldn't have. She

responded there was something in her jacket pocket, but that

defendant had placed it there. When asked what it was, Foxx

responded somewhat ambiguously. She first described it as "yay,"

 3 A-0857-15T2
a street name for cocaine, and then said she knew it was something

she was not supposed to have but did not know exactly what it was.

Fama seized from the right pocket of the jacket Foxx was wearing

a plastic baggie containing forty-four individual baggies of what

was later confirmed to be crack cocaine. Both individuals were

arrested. Defendant had on his person $440 in cash, consisting

of thirty-two ten dollar bills and six twenty dollar bills. Foxx

was cooperative and provided a recorded statement to the police,

in which she reiterated that defendant placed the drugs in her

pocket.

 Both individuals were charged with possession of cocaine and

possession with intent to distribute cocaine. Both were subjects

of the indictment referred to above. During the pendency of the

case, Foxx was admitted to the pretrial intervention (PTI) program.

She agreed to testify truthfully against defendant as a condition

of PTI.

 Foxx and defendant had lived together in a romantic

relationship for seven years. They had a child together about six

months before this criminal episode. At the time of the trial in

July 2015, their relationship was still ongoing and they were

still living together.

 At trial, Fama testified and described the events that

occurred at the time of the motor vehicle stop and arrest. Foxx

 4 A-0857-15T2
testified and gave the following account of the circumstances

leading up to the stop and arrest. She was employed at that time

at a retail store. Defendant drove her to work and dropped her

off at about noon. Before going into the store, Foxx removed her

jacket and left it on the back seat of the car. This was her

regular practice because the store contained no secure lockers in

which employees could hang their coats or leave other large

personal items. When she left her jacket in the car, there was

nothing in the pockets.

 Defendant picked her up at work at about 5:30 p.m. She put

her jacket on and rode in the front passenger seat. They made two

uneventful stops before they were pulled over by Fama. When they

were pulled over, defendant said to Foxx, "Something must be going

on." When Foxx inquired, "What?" defendant said, "Well, he -- he

got another cop," referring to the back-up officer who had arrived.

Defendant then said to Foxx, "I put something in your jacket."

Foxx replied, "What do you want me to do? There's nothing I can

do. There's a cop watching me." Foxx was asked at trial what she

told Fama when he asked her if there was anything in her pockets

that shouldn't be there. She said she responded, "Yeah." When

Fama asked what it was, she said she told him it was "dope," and

when he asked what kind of dope, she said "crack." When Fama

 5 A-0857-15T2
asked her how the drugs got there, she said, "Jerome put them

there."

 Foxx continued her testimony by telling the jury about her

PTI admission. She explained that she agreed to cooperate because

"[she] had to clear [her] name" and that she was able to resolve

the charges against her through PTI. She provided truthful

information to the police and prosecutor and agreed to testify

truthfully at trial.

 The State also produced a police witness who qualified as an

expert in drug distribution activities. He opined that facts and

circumstances such as existed in this case would be indicative of

intent to distribute the drugs. As we have stated, the jury found

defendant not guilty of that charge. Defendant did not testify

and called no witnesses.

 At the charge conference, defense counsel requested that the

court instruct the jury in accordance with the model charge

pertaining to the testimony of a cooperating co-defendant or

witness. See Model Jury Charge (Criminal), "Testimony of a

Cooperating Co-Defendant or Witness" (2006). The judge gave the

charge as part of his final jury instructions. He followed the

model charge, tailored to the evidence in the case. Specifically,

he charged as follows:

 6 A-0857-15T2
 Theresa Foxx, who was indicted for the crimes
 the defendant is on trial for, has testified
 on behalf of the State. Theresa Foxx, who was
 indicted for the crimes that the defendant is
 on trial for, has been admitted into Pre-Trial
 Intervention, PTI, on those charges, namely
 possession of controlled dangerous substance
 with intent to distribute and possession of a
 controlled dangerous substance, and has
 testified on behalf of the State.

 Evidence of Theresa Foxx's admission into PTI
 may be used only in determining the
 credibility or believability of that witness's
 testimony. You may consider such evidence,
 along with all the other factors that I
 mentioned previously in determining the
 credibility of a witness. However, you may
 not use Theresa Foxx's admission into PTI as
 evidence that this defendant is guilty of the
 crimes that he is charged with.

 The law requires that the testimony of such a
 witness be given careful scrutiny. In
 weighing her testimony, therefore, you may
 consider whether she has a special interest
 in the outcome of the case and whether her
 testimony was influenced by the hope or
 expectation of any favorable treatment or
 reward or by any feelings of revenge or
 reprisal. If you believe this witness to be
 credible and worthy of belief, you have a
 right to convict the defendant on her
 testimony alone, provided, of course, that
 upon a consideration of the whole case, you
 are satisfied beyond a reasonable doubt of the
 defendant's guilt.

 The judge also gave the model charge, tailored to the evidence

in the case, dealing with statements of a defendant, with respect

to the statement Foxx said defendant made to her in the car that

he had put something in her pocket. See Model Jury Charge

 7 A-0857-15T2
(Criminal), "Statements of Defendant" (2010). The judge rejected

defense counsel's request to charge "mere presence."

 Subsequent to trial, defendant moved for a judgment of

acquittal or, alternatively, a new trial. In denying the motion,

the judge was satisfied there was no error in the jury instructions

given. Nor was it error to refuse to charge mere presence in the

factual circumstances of this case. The judge reasoned that

possession of the drugs was not attributed to defendant because

he was present in a vehicle where the drugs were found to be

hidden. Instead, possession was attributed to him based upon the

testimony that he in fact placed the drugs surreptitiously in

Foxx's jacket pocket. The key issue for the jury to decide was

Foxx's credibility. The judge noted that defense counsel

"vigorously" and "effectively" cross-examined Foxx, pointing out

inconsistencies in her statements and her motivation to inculpate

defendant in order to exonerate herself and be admitted into PTI.

The judge also noted that extensive portions of the opening and

closing statements of both counsel dealt with Foxx's credibility.

 The judge concluded that the jury, in conducting its fact-

finding function, was in a position to assess Foxx's credibility.

In doing so, the jurors obviously believed her version of the

events — namely, that defendant surreptitiously placed the drugs

in her jacket pocket and this was unbeknownst to her until the

 8 A-0857-15T2
time of the stop. The judge therefore concluded that the verdict

was supported by sufficient credible evidence in the record and

did not constitute a miscarriage of justice under the law and

denied the motion.

 In his first point of argument, defendant contends that the

trial court erred by giving the instruction on the testimony of a

cooperating co-defendant or witness. This charge was first

developed in accordance with the holding in State v. Begyn, 34

N.J. 35, 54-56 (1961). Since then, our Supreme Court has on

various occasions reiterated the continuing efficacy of the charge

and the principles it expresses. Most recently, the Court did so

in State v. Adams, 194 N.J. 186, 206-09 (2008).

 Defendant does not argue that the judge did not correctly

follow the model charge. He argues that the model charge needs

an "overhaul" because it instructs the jury that a defendant can

be convicted on the testimony of a cooperating co-defendant or

witness alone. According to defendant, such testimony contains

inherent contradictions and is, by its nature, very unreliable.

 Defendant's argument is patently without merit. First of

all, we note that this charge generally should not be given unless

specifically requested by the defendant. Begyn, supra, 34 N.J.

at 54-56. In this case, defendant did request the charge.

Further, to preserve a question for review relating to jury

 9 A-0857-15T2
instructions, a defendant must advise the trial court of the

specific charge sought and the grounds therefor. R. 1:7-2; R.

1:8-7(b). That was not done in this case. We are therefore asked

to review and reverse a trial court based on an asserted error

that was invited, where the issue under review was not properly

preserved for appeal.

 On the merits, the model charge is a correct statement of the

law. It does not simply tell jurors that they can convict based

on the cooperating witness' statement alone. Jurors are instructed

that they should consider that testimony together with all other

factors upon which the court has instructed them regarding

assessment of the credibility of a witness. Jurors are told that

the law requires that the testimony of a cooperating witness be

given careful scrutiny, that they should consider whether the

witness has a special interest in the outcome of the case and

whether that testimony is influenced by the hope or expectation

of favorable treatment or by any feelings of revenge or reprisal.

Finally, jurors are told that if they find that testimony credible

and worthy of belief, they can convict on that testimony alone,

"provided, of course, that upon a consideration of the whole case,

[the jury is] satisfied beyond a reasonable doubt of the

defendant's guilt."

 10 A-0857-15T2
 Because there was no objection to the charge at trial, we are

guided by the plain error standard, under which is it must be

shown that an error was "clearly capable of producing an unjust

result." R. 2:10-2. Not any possibility of an unjust result will

suffice, but, in the context of a jury trial, the possibility must

be "sufficient to raise a reasonable doubt as to whether the error

led the jury to a result it otherwise might not have reached."

State v. Macon, 57 N.J. 325, 336 (1971). In the context of a jury

charge, plain error is

 legal impropriety in the charge prejudicially
 affecting the substantial rights of the
 defendant and sufficiently grievous to justify
 notice by the reviewing court and to convince
 the court that of itself the error possessed
 a clear capacity to bring about an unjust
 result.

 [State v. Hock, 54 N.J. 526, 538 (1969), cert.
 denied, 399 U.S. 930, 90 S. Ct. 2254, 26 L.
 Ed. 2d 797 (1970).]

 There was no error here, let alone plain error. Jurors, in

the performance of their essential fact finding function, analyze

the credibility of witnesses. They are instructed on the general

principles that should guide their assessment. With respect to

particular types of evidence, proper instructions provide specific

guidance as to how that kind of evidence should be evaluated. That

was done here in the clearest terms. It is presumed that jurors

follow the instructions they are given, State v. Nelson, 155 N.J.

 11 A-0857-15T2
487, 526 (1998), cert. denied, 525 U.S. 1114, 119 S. Ct. 890, 142

L. Ed. 2d 788 (1999), and we have no reason to suspect otherwise

in this case.

 In Point II, defendant argues that the court erred in denying

his motion for acquittal or a new trial. We do not agree. The

question a trial court must answer when evaluating a judgment of

acquittal is

 whether, viewing the State's evidence in its
 entirety, be that evidence direct or
 circumstantial, and giving the State the
 benefit of all its favorable testimony as well
 as all of the favorable inferences which
 reasonably could be drawn therefrom, a
 reasonable jury could find guilt of the charge
 beyond a reasonable doubt.

 [State v. Reyes, 50 N.J. 454, 459 (1967).]

If that question is answered in the affirmative, the court is

bound to deny the motion. State v. Franklin, 52 N.J. 386, 406

(1968). It is clear to us, as it was to the trial judge, that

viewing the evidence most favorably to the State, there was no

basis to interfere with the jury's finding of guilt beyond a

reasonable doubt.

 Finally, in Point III, defendant argues that his sentence is

excessive. Defendant was eligible for extended term sentencing

as a persistent offender. See N.J.S.A. 2C:43-7 and N.J.S.A. 2C:44-

 12 A-0857-15T2
3(a). The State moved for such sentencing and the judge denied

the motion.

 The judge found the applicability of aggravating factors (3)

the risk that defendant would commit another offense, (6) the

extent of the defendant's prior criminal record and the seriousness

of the offenses of which he has been convicted, and (9) the need

for deterring the defendant and others from violating the law.

See N.J.S.A. 2C:44-1a(3), (6), and (9). The judge found no

mitigating factors to apply. The judge's findings regarding

aggravating and mitigating factors were based on competent and

credible evidence in the record, the trial court correctly applied

the sentencing guidelines in the Code of Criminal Justice, and the

sentence imposed was not excessive or unduly punitive. State v.

O'Donnell, 117 N.J. 210 (1989); State v. Gertler, 114 N.J. 383

(1989); State v. Roth, 95 N.J. 334 (1984).

 Affirmed.

 13 A-0857-15T2