# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3414-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.K.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF L.B.,
G.B., T.K., and D.B.,[1] minors.

_____

> Argued February 3, 2022 – Decided February 16, 2022
>
> Before Judges Mawla and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FG-15-0069-19.
>
> Eric R. Foley argued the cause for appellant (Afonso

---

[1] D.B. is not part of this appeal.

Archie & Foley, PC, attorneys; Eric R. Foley, on the briefs).

Amy Melissa Young, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Amy Melissa Young, on the brief).

Neha Gogate, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Neha Gogate, on the brief).

PER CURIAM

Defendant J.K.[2] appeals from a July 21, 2021 order adjudicating her motion to vacate a judgment of guardianship following the identified surrender of parental rights to her daughters, D.B., L.B., G.B., and T.K. to their resource parents. The motion judge vacated the judgment regarding D.B. because her resource parent no longer wished to adopt her but declined to vacate the judgment related to other children. We affirm.

J.K. is the mother of all four children; each of the children's fathers are deceased. J.K.'s involvement with the Division of Child Protection and Permanency began in 2006, and included numerous referrals regarding her drug abuse, mental health, criminality, and abuse and neglect of the children. Over

---

[2] We use the parties' initials to protect their privacy. See R. 1:38-3(d)(12).

the years, the Division provided services to J.K., including assistance with housing, utilities, furniture, clothing, supplies for the children, and various forms of treatment.

However, J.K.'s frequent incarcerations and psychiatric hospitalizations forced the children into foster care and out-of-home placements for years at a time. In January 2018, the Division filed a complaint and an order to show cause for care and supervision, which the court granted. The court ordered J.K. to comply with the Division's recommendations and the Division to provide services to her and the children. J.K. did not comply; she continued to abuse drugs and had more psychiatric hospitalizations. That April, the Division filed an amended complaint seeking temporary custody of the children, which the court also granted. The court ordered J.K. to comply with the Division's recommendations and ordered services including random urine screens, an updated substance abuse evaluation, a referral to specialized therapy, and ongoing mental health treatment for the children.

The situation did not improve. J.K. continued to relapse and the children remained in out-of-home placements. The eldest child, D.B., suffered from severe behavioral problems, requiring placement in more than one treatment home for several months before transitioning to live with L.B. in P.K.'s home.

3

To afford the children permanency, the Division filed a guardianship complaint in June 2019. By December 2019, G.B. and T.K. were placed with a second resource parent, Li.B.; and D.B. and L.B. were with P.K. Both resource parents wished to adopt. The court scheduled trial for January 2020.

On December 10, 2019, J.K. executed an identified surrender of her parental rights of the children to their respective resource parents. The motion judge questioned J.K., who confirmed she understood the proceedings, had time to consider her options, discussed the matter with counsel and was satisfied with his answers. J.K.'s counsel then questioned her about her surrender and reviewed every applicable question in the voluntary surrender of parental rights forms, which J.K. signed, and confirmed the surrender was to the two separate resource parents.

When J.K.'s counsel reviewed the surrender forms with her regarding T.K. and G.B. and asked if she wanted pre-surrender counseling from the Division, she said yes. When counsel reviewed the forms for L.B. and D.B. and inquired about pre-surrender counseling, J.K. again said yes. The judge advised the surrender could not go forward without the counseling. However, J.K. then waived pre-surrender counseling and stated, "I'll get my own counseling." J.K. confirmed she understood the finality of the surrender. Specifically, the judge

asked "[Y]ou understand that the only way that your parental rights will be reinstated is if [Li.B.], with regard to [T.K.] and [G.B.], could not adopt them, or if P.K. could not adopt [L.B.] or [D.B.]  Do you understand that?"  J.K. answered "Yes."  The judge accepted the surrenders.

In June 2021, J.K. filed a motion to vacate the judgment as to all four children.  She certified she surrendered her parental rights because she understood all four children would be adopted quickly and by the end of 2020.  She stated she learned the adoptions had not occurred "and that P.K. does not want to adopt [D.B.]"  She claimed her surrender was contingent on all the children being "adopted collectively instead of piecemeal" and that she would not have otherwise surrendered her rights.

J.K. also argued the court should grant her motion because she completed an inpatient program in March 2020 and attached a certificate as proof.  She also attended a behavioral health program from April until July 2020 and continued intensive outpatient treatment from October 2020 to April 2021.

The Division's opposition to the motion confirmed D.B. was no longer living with P.K. and P.K. did not wish to adopt due to the child's behavioral issues.  The Division consented to the court vacating the judgment regarding D.B. but opposed doing so for the other children.  According to the Division,

A-3414-20

G.B. and T.K. remained in their placement and similarly L.B.'s adoption was also moving forward.

G.B., L.B., and T.K. also opposed the motion. G.B.'s attorney advised the court the child "is extremely frustrated with the time it has taken to finalize the adoption due primarily to the COVID-19 Pandemic. She has lived with her resource mother since August 2019 . . . and simply wants to move on with her life." L.B.'s counsel likewise informed the court the child did not want "any contact with [J.K.] now and in the foreseeable future. She is anxious to have the adoption finalized so that she can officially call P.K. '[m]om.' . . . There are no circumstances which would justify severing the bond that has grown between [L.B.] and P.K."

The motion judge vacated the judgment regarding D.B. but denied the motion as to the remaining children. The judge stated she had accepted J.K.'s surrender and recalled J.K. was "alert and oriented" and "understood what was happening . . . that under no circumstances was this surrender going to be vacated except if the children, or child, could not be adopted by the identified caregiver." The judge noted since the surrender she held "several summary hearings to monitor the progress of . . . the adoption[s] . . . as well as the children[ a]nd . . . the three remaining children[] are thriving in their placements

6 <span>A-3414-20</span>

where they have been for a significant period of time." The judge also noted the children's caregivers ensured the children remained in contact with one another despite living in separate homes. The judge also found J.K. had not provided adequate proof of her rehabilitation, having completed just one short-term residential rehabilitation program.

The motion judge concluded as follows:

> There was never any representation until now in any of the proceedings that this was a package where all four children had to be adopted or it was inappropriate. . . . The only condition precedent to a vacation of a judgment of guardianship in an identified surrender is that the resource parents who [have] been identified [are] no longer able to adopt the child. . . .

> [T]here is no time frame required for adoption. It can take as long as it takes. It is not having a deleterious effect on three children that would be ready, willing and able to be adopted by the foster parents. . . . And there is nothing before me to suggest that anything that's happened would render the enforcement of the earlier judgment of guardianship inequitable.

> There simply is nothing other than the subjective suggestions by [J.K.] that she believes that it's taken too much time and that she believes that if . . . all four [were not] going to be adopted right away and in the fashion anticipated then it can't be held to be proper and the judgment of guardianship should be reopened to allow the [c]ourt to explore new options in permanency.

> There has been no lack of commitment on the part of the resource parents with regard to the three children.

A-3414-20

. . . [T]here's simply no evidence offered to the [c]ourt that would warrant the extraordinary remedy under [Rule] 4:50-1 to allow a judgment to be vacated. . . . This is a situation where the movant believes that she is in a better place and is now able to take on the responsibilities of her children. Respectfully that is not the test for this [c]ourt.

J.K. raises the following points on appeal:

POINT I: THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY [MISCONSTRUING] THE PROVISIONS OF THE CONDITIONAL IDENTIFIED SURRENDER AND ABUSED ITS DISCRETION IN DENYING THE MOTION TO VACATE THE JUDGMENT OF GUARDIANSHIP.

A. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO VACATE THE JUDGMENT OF GUARDIANSHIP AS TO ALL FOUR CHILDREN WHERE THE CONDITION PRECEDENT OF THE IDENTIFIED SURRENDER WAS NOT MET WHEN ALL OF THE CHILDREN COULD NOT BE ADOPTED.

B. ALTERNATIVELY, THE COURT ABUSED ITS DISCRETION BY FAILING TO HOLD AN EVIDENTIARY HEARING WHERE J.K. PRESENTED A PRIMA FACIE SHOWING FOR RELIEF UNDER [RULE] 4:50-1.

POINT II: THE SURRENDERS AND JUDGMENT OF GUARDIANSHIP SHOULD BE VACATED BECAUSE THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ACCEPTING THE SURRENDERS OF J.K. WHERE THE RECORD PLAINLY SHOWS THAT J.K. REQUESTED PRE-

SURRENDER COUNSELING AND BECAUSE THE
SURRENDERS WERE NOT MADE IN A KNOWING
AND VOLUNTARY MANNER.

I.

The Supreme Court has sanctioned the use of Rule 4:50-1 to vacate a judgment terminating parental rights. In re Guardianship of J.N.H., 172 N.J. 440, 473-74 (2002). The Court adopted a two-part test, namely, a parent's motion "'must be supported by evidence of changed circumstances' as the 'moving party bears the burden of proving that events have occurred subsequent to the entry of a judgment to justify vacating the judgment.'" N.J. Div. of Youth & Fam. Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010) (quoting J.N.H., 172 N.J. at 473). Secondly, "[t]he focus of a termination proceeding is the 'best interests' of the child." J.N.H., 172 N.J. at 471; see also N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 228 (2010). The trial court must consider the child's best interests because it may affect the child's stability and permanency. "[T]he primary issue is . . . what effect the grant of the motion would have on the child." J.N.H., 172 N.J. at 475. A decision on a motion under Rule 4:50-1 is addressed to the sound discretion of the motion judge, and we will not disturb it absent a clear abuse of discretion. T.G., 414 N.J. Super. at 434.

A-3414-20

Having considered J.K.'s arguments on appeal, we affirm substantially for the reasons expressed by the motion judge. We add the following comments.

We have held "proof of [a parent's] rehabilitation from substance abuse, [the parent's] employment, the child's continued attachment, or [the child's] failure to thrive in his foster home" may be circumstances warranting relief under Rule 4:50-1(f). Id. at 438. Given J.K.'s long history of substance abuse and mental health issues, her completing one certification did not justify granting her motion or an evidentiary hearing.

J.K.'s motion also lacked any objective evidence meeting the second prong of J.N.H. to show it would be in L.B., G.B., or T.K.'s best interests to vacate the judgment and halt the adoption process. Given D.B.'s mental health history, which unfortunately prevented her adoption, it was appropriate for the judge to grant the motion only as to her. It was not error to deny the motion as to the three younger children because each child has her "own rights, including the right to a permanent, safe and stable placement." N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). On this record, we are unpersuaded the younger children would be adversely impacted by allowing their adoptions to proceed without D.B.

## II.

Lastly, we reject J.K.'s argument the judgment is invalid because it was entered without affording her pre-surrender counseling. As a general proposition, we do not consider arguments that were not presented to the trial court in the first instance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Notwithstanding that J.K. did not raise this argument to the motion judge, a thorough review of the record reveals she waived the right to pre-surrender counseling by the Division in the interests of completing the identified surrender and pursuing counseling on her own. Therefore, even under a plain error standard, we are unconvinced there was a legal impropriety which affected J.K.'s rights "sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538 (1969).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-3414-20