NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5142-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDRE COCLOUGH, a/k/a
ANDRE COLLOUGH, ANDRA
COCLOUGH, ANDRE COLCLOUGH,
ANDRE COCLOUCH, and ANDRE
PORTEE,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

May 2, 2019

APPELLATE DIVISION

Submitted November 8, 2018 – Decided May 2, 2019

Before Judges Koblitz, Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-02-0070.

Joseph E. Krakora, Public Defender, attorney for appellant (Tamar Y. Lerer, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Svjetlana Tesic, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

In his appeal from his conviction of third-degree burglary, N.J.S.A. 2C:18-2(a)(1), and fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1), defendant raises, as plain error, issues regarding the court's jury instructions and police witnesses' identification-related testimony. These contentions lack merit and warrant only brief comment. We address at greater length defendant's argument that he must be resentenced because of a breakdown in his relationship with his trial counsel. A defendant is entitled to conflict-free representation. But, he may not profit from undermining his attorney-client relationship through his own abusive or threatening conduct. Despite defendant's insults and threats, defense counsel wished to proceed, as did defendant. We discern no basis for resentencing. Therefore, we affirm the conviction and sentence.

I.

The State alleged that defendant, Andrew Coclough, along with another man and a woman, entered a Jersey City apartment building without permission; then, together with the other man, he forcibly removed four interior surveillance cameras.

The State's principal witness was an administrator for the apartment building. She authenticated a video-recording from the building's digital surveillance system, which was admitted into evidence but is not in the record

before us. The recording depicted a woman force open the door to the building, then two men follow her in. The administrator testified that she was familiar with all the building's tenants, and that none of the three persons had permission to enter the building. One of the men – allegedly, defendant – was dressed in a blue bubble jacket and had a visible bump on his head. The second man, Dione Pegues, wore a black North Face jacket and a cap with a red emblem.[1] The recording allegedly showed defendant strike the cameras to loosen them from the wall before Pegues removed them. The recording also showed defendant and Pegues leave the building, but they carried nothing in their hands.

A few days later, relying on a "be on the lookout" flyer that included still photos taken from the recording, Jersey City Police Sergeant Dino Nerney arrested defendant and Pegues because they "fit the description facially and by the clothing of two of the three suspects." When defendant removed his hat, he revealed a bump on his head like that depicted on the video.

Jersey City Detective Alexander Rivera authenticated various still photos from the recording, as well as post-arrest photos of defendant wearing a blue bubble jacket with a bump on his head. The photos were admitted into evidence but are not before us. The detective testified that his purpose in

---

[1] Pegues pleaded guilty before defendant's trial.

taking the post-arrest photos was "to depict the . . . coat and the hat that shows – that's very similar to the other . . . individual in the video."

Defendant did not testify or present any defense witnesses.

The jury convicted defendant of burglary and criminal mischief, and acquitted him of theft by unlawful taking, N.J.S.A. 2C:20-3(a). After denying the State's motion for an extended term, the court imposed a four-year term on the burglary conviction, concurrent with an eighteen-month term on the criminal mischief conviction.

## II.

Defendant presents the following issues for our consideration:

POINT I

IN THIS FOUR-WITNESS TRIAL, TWO WITNESSES MADE INAPPROPRIATE IDENTIFICATIONS AND A THIRD MADE AN IDENTIFICATION THAT THE JURY WAS NOT INSTRUCTED AS TO HOW TO ASSESS. MOREOVER, THE JURY WAS NOT INSTRUCTED THAT THE STATE HAD TO PROVE THE IDENTITY OF THE PERPETRATOR BEYOND A REASONABLE DOUBT. FOR ALL OF THESE REASONS, DEFENDANT'S CONVICTIONS MUST BE REVERSED. (Not Raised Below).

A. Officers' Testimony That Defendant Was The Person On The Video Was Inappropriate Ultimate-Issue Testimony, Unhelpful To The Jury, And Highly Prejudicial. Its Admission Necessitates Reversal Of Defendant's Convictions.

B.   The Failure To Issue Any Identification Instruction In A Misidentification Case Necessitates Reversal Of Defendant's Convictions.

C.   The Failure To Instruct The Jury On How To Assess A Witness's Identification Of The People On The Video As Not Tenants Of The Apartment Building Necessitates Reversal Of The Burglary Conviction.

POINT II

THE JURY INSTRUCTIONS ON BURGLARY LEFT OPEN THE POSSIBILITY OF A NON-UNANIMOUS VERDICT, NECESSITATING REVERSAL OF DEFENDANT'S BURGLARY CONVICTION. (Not Raised Below).

POINT III

BECAUSE OF THE UTTER BREAKDOWN IN THE RELATIONSHIP BETWEEN DEFENDANT AND HIS ATTORNEY AT SENTENCING, A NEW SENTENCING MUST BE CONDUCTED IN WHICH DEFENDANT IS REPRESENTED BY NEW COUNSEL.

Having reviewed defendant's arguments in light of the record and applicable principles of law, we affirm his conviction and sentence.

A.

Defendant contends, as a point of plain error, that the sergeant and detective usurped the jury's function by testifying, without objection, that defendant appeared to be the man depicted in the video recording. This

opinion testimony may well have been subject to an objection, since the jury was as capable as the officers of determining whether defendant appeared in the video. See State v. Lazo, 209 N.J. 9, 23 (2012) (stating "when there is no change in defendant's appearance, juries can decide for themselves – without identification testimony from law enforcement – whether the person in a photograph is the defendant sitting before them").

However, the error, if any, was not "clearly capable of producing an unjust result." R. 2:10-2. Not any possibility of an unjust result will suffice as plain error, only "one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

The officers' testimony did not affect the result because the defense conceded at the outset of the case that defendant entered the apartment building, along with the woman and Pegues. Defense counsel stated in his opening:

> You're not going to see Mr. Coclough breaking into a building. He's not slipping through a window. He's not kicking down a door. The door is held open by this unidentified female. Mr. Coclough walks in with Mr. Pegues and this female. And you're going to see Mr. Pegues go around multiple cameras and hit these cameras until they go black. . . . [I]t's Mr. Pegues who appears to have some sort of a cutting device in his hand and possibly causes further damage.

6

You're not going to see Mr. Coclough with any cutters. You're not going to see Mr. Coclough on video in the possession of any cameras. He's not holding them. He's not seen walking out with them.

The defense theory was that defendant did not know he was not permitted to enter. Although the woman kicked the door open, the administrator admitted that many bona fide tenants – including several depicted on the recording – would kick open the door, which was held shut by magnets, rather than use the swipe-card system. The defense also argued that Pegues, not defendant, removed the cameras. The main issue in the case was not, as defendant now argues, whether defendant was one of the men on the video, since defense counsel conceded that fact at the outset. Although he challenged, in summation, the State to prove defendant ever entered the building, the thrust of the summation, consistent with the opening, was that the State had not demonstrated each element, including the requisite state of mind, of burglary or criminal mischief.[2]

---

[2] Even if identification were a significant issue in the case, we have no way of determining whether the officers' testimony was prejudicial or merely cumulative, because defendant has failed to present us with the relevant portions of the record – the photos and the recording. See State v. Cordero, 438 N.J. Super. 472, 489 (App. Div. 2014) (citing Rule 2:6-1(a)). Conceivably, the post-arrest photo may have presented undeniable evidence that defendant was the person depicted in the surveillance recording. In that case, the officers' identification testimony would not be clearly capable of producing an unjust result.

B.

Defendant also argues, as plain error, that the court should have, sua sponte, instructed the jury on the vagaries of identification. In particular, defendant contends the court should have instructed the jury how to weigh the administrator's testimony that defendant was not a tenant, since her non-recognition of defendant was, in effect, an identification. We disagree.

"When identification is a 'key issue,' the trial court must instruct the jury on identification, even if a defendant does not make that request." State v. Cotto, 182 N.J. 316, 325 (2005). However, as noted, identification was not a "key issue" in the case. Therefore, the omission of an instruction on identification was not clearly capable of producing an unjust result. See State v. Hock, 54 N.J. 526, 538 (1969) (stating that, in the context of jury instructions, plain error is a "legal impropriety . . . prejudicially affecting the substantial rights of the defendant and sufficiently grievous to . . . convince the court that of itself the error possessed a clear capacity to bring about an unjust result"); accord State v. Montalvo, 229 N.J. 300, 320-21 (2017).

C.

Regarding the burglary count, defendant contends as plain error that the judge should have instructed the jury that it had to agree unanimously as to what crime defendant intended to commit upon his entry into the premises

without permission. The judge instructed the jury that to convict, it had to find that defendant entered the premises with "the purpose to commit an offense therein." The judge explained, "Purpose to commit an offense means that the defendant intended to commit an unlawful act inside the structure. The unlawful acts allegedly intended are set forth in Counts 2 and 3 of the Indictment . . . the theft by unlawful taking and the criminal mischief."

We discern no error, let alone plain error. To convict a defendant of burglary in violation of N.J.S.A. 2C:18-2, unanimity is only necessary in finding that the defendant intended to commit an offense when unlawfully entering a structure; unanimity is not required as to the specific offense. <u>See</u> <u>State v. Robinson</u>, 289 N.J. Super. 447, 454-55 (App. Div. 1996).[3]

Since the jury acquitted defendant of theft and convicted defendant of criminal mischief, the jury most likely agreed that defendant entered with the intent to commit criminal mischief. It is theoretically possible that some jurors found that defendant entered the building intending to commit theft but, once inside, decided to commit criminal mischief instead, while others found that he intended criminal mischief all along. However, the jury would still be

---

[3] Courts of other jurisdictions agree. <u>See e.g.</u> <u>People v. Russo</u>, 25 P.3d 641, 646 (Cal. 2001); <u>State v. Luster</u>, 713 A.2d 277, 280 (Conn. App. Ct. 1998); <u>State v. Griffin</u>, 112 P.3d 862, 882-83 (Kan. 2005); <u>State v. Gardner</u>, 889 N.E.2d 995, 1008-09 (Ohio 2008); <u>State v. Hammer</u>, 576 N.W.2d 285, 287 (Wis. Ct. App. 1997).

unanimous that defendant entered the building with the "purpose to commit an offense therein or thereon." N.J.S.A. 2C:18-2.

## D.

At the sentencing hearing, defense counsel disclosed to the court that his relationship with defendant had deteriorated to the point that defendant had threatened to harm him. Defendant confirmed the strain in the relationship, stating he was "done playing" with his attorney. The colloquy proceeded as follows:

> [DEFENSE COUNSEL]: Judge, I made an attempt to review the Pre-Sentence Report with Mr. Coclough. Unfortunately, after going through one page, he made disparaging remarks both anti-Semitic and homophobic, became irate in the jury room, and let's not beat around the bush, threatened me, and knows where I live.
>
> So I attempted to get through it. But I'm ready to proceed.
>
> MR. COCLOUGH: Me too.
>
> THE COURT: Hang on. That's a lot for me to digest. I have to think about that for a minute. Are you prepared to proceed for sentencing, Mr. Coclough?
>
> MR. COCLOUGH: Yes, I am.
>
> THE COURT: With Mr. –
>
> MR. COCLOUGH: I'm done playing with him.

THE COURT: -- with [defense counsel] as your attorney?

MR. COCLOUGH: Yes.

THE COURT: Are you ready to proceed, [defense counsel]?

[DEFENSE COUNSEL]: Not a problem, Judge.

THE COURT: Do you want to also?

[DEFENSE COUNSEL]: Not a problem.

The court then proceeded with the sentencing hearing. Defense counsel argued successfully against the State's motion for an extended term. Once given an opportunity to speak, defendant aired grievances against the prosecutor, his probation officer, his co-defendant, and defense counsel. Admitting that he was the man depicted in the video, he complained that his attorney told him not to take the stand and did not subpoena a witness defendant requested. The court then imposed the sentence we have already described. Defendant contends he is entitled to a new sentencing with new counsel based on the breakdown of the attorney-client relationship. We disagree.

Although defendant expressed dissatisfaction with defense counsel, he did not state he wanted to discharge him and represent himself, nor did he request appointment of new counsel. Defense counsel, for his part, did not

state that he was unable to proceed. In that respect, this case is distinguishable from State v. Vasquez, 432 N.J. Super. 354 (App. Div. 2013), upon which defendant relies. In that case, the defendant indicated he wanted to replace his attorney. Id. at 356-57. The attorney agreed there was a conflict and apparently did not fully participate in the remainder of the sentencing hearing. Id. at 359. We held that the court was required to consider the conflict issue, and whether the defendant knowingly, intelligently and voluntarily waived his right to counsel, before proceeding with sentencing. Id. at 359-60.

The court was not obliged to advise defendant of his right to represent himself. State v. Rose, ___ N.J. Super. ___, ___ (App. Div. 2019) (slip op. at 17). And defendant was not entitled to a change of appointed counsel "absent a showing of 'substantial cause.'" State v. Harris, 384 N.J. Super. 29, 59 (App. Div. 2006) (quoting State v. Coon, 314 N.J. Super. 426, 438 (App. Div. 1998)). "Although an irreconcilable conflict establishes good cause, courts warn that defendant cannot manufacture good cause by abusive and uncooperative behavior." Wayne R. LaFave et al., 3 Criminal Procedure § 11.4(b) (4th ed. 2015); see also People v. Linares, 813 N.E.2d 609, 612 (N.Y. 2004) (affirming conviction and rejecting defendant's argument that he was entitled to a new trial because he was denied substitute counsel after he threatened his attorney, who nonetheless proceeded to represent him).

"A criminal defendant's constitutional guarantee of loyal counsel and open communication . . . does not equate to a guarantee of attorney-client rapport," State v. Miller, 216 N.J. 40, 64 (2013), particularly when the rapport is undermined by the defendant's own abusive or threatening conduct. See United States v. McLeod, 53 F.3d 322, 325-26 (11th Cir. 1995) (holding a defendant could not claim he was denied the right to counsel after he "was verbally abusive and threatened to harm" his attorney). Indeed, a defendant may be deemed to waive or forfeit the right to counsel by such conduct. Ibid.; see also LaFave et al., supra; State v. Crisafi, 128 N.J. 499, 518 (1992) (stating "a trial court confronted with a wily defendant may consider the efficient administration of criminal justice and force a defendant to choose between appointed counsel and proceeding pro se"); Rose, ___ N.J. Super. at ___ (slip op. at 19).

That defendant had a conflict with his attorney does not necessarily mean his attorney had a conflict of interest. Cf. Miller, 216 N.J. at 63 (stating that "[a] criminal defense attorney must not be hindered by conflicts of interest that could compromise his or her duty to a client"); State v. Drisco, 355 N.J. Super. 283, 294-95 (App. Div. 2002) (holding that a defendant's ineffectiveness allegation in a prior case did not create a disqualifying conflict for the same attorney in a later case). It is surely not the first time that a

A-5142-16T4

defendant has cast aspersions on or threatened his or her defense counsel. We condemn abusive or threatening conduct. Yet, the defense attorney is usually in the best position to determine whether a client is merely blowing off steam or poses a real threat that disables the attorney – from a sense of self-preservation or extreme aversion for the client – from providing diligent and loyal representation. Here, defense counsel did not move to withdraw. He affirmatively stated he was ready to proceed. Defendant wanted to proceed as well. Defense counsel then presented a successful argument opposing an extended term.

Finally, we are wary of establishing a rule recognizing a conflict of interest whenever a defendant threatens, demeans, or insults his attorney. Such a rule would endow the defendant with the unilateral power to create a self-serving conflict that would compel the withdrawal of counsel and delay proceedings. Cf. McKee v. Harris, 649 F.2d 927, 932 (2d Cir. 1981) (denying defendant "a reassignment of counsel simply on the basis of a 'breakdown in communication' which he himself induced," as that would "grant[] unrestrained power to the defendant to discontinue the trial" (citation omitted)).

In sum, we discern no basis to disturb the sentence because of the strain in the relationship between defendant and defense counsel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5142-16T4