# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3247-16T2

IN THE MATTER OF
THE ADOPTION OF
A CHILD BY C.B.

_____

Submitted September 25, 2019 – Decided October 9, 2019

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket Nos. FA-03-0081-16 and FA-03-0082-16.

Watson Bell Law Firm, LLC, attorneys for appellant (Angela D. Watson, on the brief).

Law Office of Scott T. Schweiger, attorneys for respondent (Scott T. Schweiger, on the brief).

PER CURIAM

Defendant D.B.[1] appeals from the March 16, 2017 judgments of

guardianship and the amended judgment of guardianship dated April 17, 2017

---

[1] We refer to the adult parties by initials and to the children by fictitious names, to protect their privacy. R. 1:38-3(d)(12).

terminating his parental rights to his two children, D.B. (Daniel) and A.B. (Annie).[2] The judgments permitted plaintiff C.B. to proceed on separate complaints to adopt Daniel and Annie. C.B. is the husband of the children's biological mother, E.B.

D.B. contends the trial court erred in terminating his parental rights and abused its discretion when it denied his adjournment requests on three of the four trial dates held in this matter. D.B. further claims the trial court abused its discretion when it denied his request on October 3, 2016 to permit him to represent himself. Based on our review of the record and applicable law, we discern no such error. Instead, we are satisfied the evidence placed before the trial court overwhelmingly supports the decision to terminate D.B.'s parental rights. Accordingly, we affirm substantially for the reasons set forth by Judge Mark P. Tarantino in his thorough oral decision of March 16, 2017.

We will not recite in detail the history of this matter. Instead, we incorporate by reference the factual findings and legal conclusions contained in

---

[2] The amended judgment of April 17, 2017 was entered nunc pro tunc to March 16, 2017 to address a clerical error in one of the judgments which neglected to terminate D.B.'s parental rights as to Annie.

A-3247-16T2

Judge Tarantino's decision. We add the following comments to provide context to our decision.

D.B. and E.B. were divorced in 2010 after several years of marriage. Daniel and Annie were born in 2005 and 2007, respectively. D.B.'s presence in his children's lives can be best described as sporadic, due to his substance abuse and mental health issues, as well as his frequent periods of incarceration. For example, in 2007 and 2008, D.B. was incarcerated for approximately fifteen months, after which he was incarcerated again for violating a final restraining order secured by E.B.

In 2011, D.B. was admitted to Trenton Psychiatric Hospital for mental health issues and also remanded to jail for violating his parole after testing positive for narcotics. In 2012, he was admitted to Ancora Psychiatric Hospital after attempting suicide while incarcerated. Upon his release from Ancora, he overdosed on prescription medication. Subsequently, in December 2013, defendant was incarcerated for robbery and remained confined throughout this litigation.

Beginning in 2009, C.B. assumed the parental role that D.B. left vacant. C.B. helped the children reach milestones, such as teaching them how to ride a bike, and he attended parent-teacher conferences and the children's

3

extracurricular activities. In light of his involvement with Daniel and Annie, C.B. filed separate complaints in December 2015 to adopt each child. D.B. immediately objected to the proposed adoptions and requested that the court appoint counsel for him. His request for counsel was granted. Moreover, the trial court appointed guardians ad litem (GALs) for D.B. and each of the children. In September 2016, the children's GALs submitted a joint report supporting C.B.'s petitions for adoption.

A number of case management conferences were conducted in this matter. After one such conference in July 2016, Judge Tarantino entered an order scheduling a guardianship trial to begin on October 3, 2016. Although the guardianship trial commenced on that date, it continued on three additional dates over a period of almost six months. One trial date had to be cancelled due to inclement weather.

The record reflects that on the first day of trial, October 3, 2016, D.B. requested an adjournment to obtain more documents, including a psychiatric evaluation and risk assessment of himself. Additionally, he sought time to secure transcripts from other proceedings which he believed were pertinent to his defense. Additionally, D.B. asked for his counsel's removal. Judge Tarantino denied each of these requests.

4

When denying the adjournment request on the first day of trial, Judge Tarantino noted C.B.'s adoption complaints had been pending for ten months. The judge concluded D.B. had plenty of time to order transcripts and secure evaluations. The judge also found the "best reason [D.B.] can come up with [for his counsel's removal] is that there are things that he needs. And that's a different issue than I don't have an attorney-client relationship." Judge Tarantino expressed confidence D.B.'s counsel was an "experienced, conscientious attorney by all indications," that he had "done a very thorough and complete job" compiling over twenty exhibits, and was ready to proceed. Next, the judge reminded the parties that he had to consider the children's need to have this matter resolved.

On the second day of trial in October 2016, D.B. neither requested an adjournment nor did he ask the court to revisit the issue of his counsel's removal. However, in the latter part of the third day of trial on December 13, 2016, D.B. requested an adjournment, through counsel. D.B.'s attorney stated that D.B. indicated he was not of sound mind and did not have his proper medications. D.B.'s attorney further advised that his client wanted a postponement due to the

absence of his GAL.[3] Counsel for C.B. objected to any postponement and questioned whether D.B. might be engaging in a delay tactic, as D.B. had not wanted to come out of his cell earlier that morning.

Judge Tarantino informed counsel that he had been assured by sheriff's officers that D.B. was transported with his medications. The judge also noted that D.B. had been alert during witness testimony that day and "he appeared to be at least mentally okay," adding, "I'm very concerned that he is using this as a delay tactic." Judge Tarantino expanded on such comments, stating he had been "told by the jail people . . . that [D.B.] did receive his medications. . . . [T]here's no way to know that for sure, but I do notice that during the day today, right from the start, continuing well through [a witness's] testimony to the end of his testimony a few moments ago, that [D.B.], to his credit, was alert, was participating, was consulting with counsel, was looking at the witnesses. . . . He was taking notes at times and was somebody who seemed to the court to be very actively participating in his trial." Additionally, the judge stated D.B. did "not necessarily need his guardian ad litem to be here when he testifies. . . . And if

---

[3] The record indicates D.B.'s GAL was not present on this day of trial due to an illness.

[D.B.'s guardian] is sick, that is really not of huge consequence, because I know [his GAL] has been involved with him since his appointment."

The court did not end its analysis there. Instead, the court engaged D.B. in a colloquy, asking, "you don't feel up to testifying today. Is that what you're saying?" Under oath, D.B. responded "well, I would like to start my testimony and possibly finish it today, because I'm worried about having to go through this again, being remanded on the next appearance." Judge Tarantino confirmed to D.B. that if he did not testify that day, he would be brought back. The judge then asked D.B. if he felt well enough to testify, to which D.B. said, "Yes." Judge Tarantino probed further, asking D.B. if he had "the presence of mind to be able to understand" questions asked of him and to answer those questions. D.B. responded, "[y]es, Your Honor." With these assurances from D.B., Judge Tarantino found the trial should continue as scheduled.

Prior to the last day of trial in March 2017, D.B.'s attorney filed a motion to be relieved as counsel, claiming D.B. had threatened him, had challenged his recommendations, made "independent discovery demands and written directly to the court." Defense counsel specifically certified that D.B. made the following threat to him: "you best believe I am coming for you after I lose my kids, you can take that any way you want." When the parties returned to court

for the last day of trial on March 16, 2017, D.B. did not deny making this statement. He nevertheless claimed that "it would be detrimental to [his] defense if [his attorney] is relieved as counsel due to the fact that [he] had no time to prepare to be able to represent [himself]." The trial court granted counsel's motion to be relieved, concluding it was D.B.'s own behavior and conduct that caused his counsel's removal and that if another attorney was appointed in his counsel's stead, D.B. would treat superseding counsel no differently. The trial continued the same day D.B.'s counsel was permitted to withdraw. Upon the conclusion of all testimony on March 16, 2017, Judge Tarantino issued an oral opinion terminating D.B.'s parental rights.

Judge Tarantino reviewed the evidence, evaluated and accepted the credibility of plaintiff's witnesses and found D.B.'s testimony not credible. The judge concluded D.B. had inadequately addressed the children's needs over a significant period of time. The court also found D.B.'s testimony was self-centered and focused on his needs rather than on the welfare of the children. The judge found D.B.'s "position [is] largely . . . about himself, his shortcomings, his regrets, not really focused on the children, very minimally."

Judge Tarantino observed that D.B. had not made a motion or attempted to contact his children for over a year before he was incarcerated on the sentence

8

he was currently serving. Judge Tarantino further commented, "this is a common theme for [D.B.] where his words and intentions contradict [his actions]."

Our task as an appellate court is to determine whether the decisions of the Family Part are supported by substantial credible evidence in the record and consistent with applicable law. Cesare v. Cesare, 154 N.J. 394, 412 (1998). We owe particular deference to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise." Id. at 413. Unless the judge's factual findings are "so wide of the mark that a mistake must have been made," they should not be disturbed, even if we would not have made the same decision if we had heard the case in the first instance. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

It is well established that although parental rights are fundamental, they are not absolute. Instead, they are balanced against the "State's parens patriae

responsibility to protect the welfare of the children."  In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999) (citing In re Guardianship of J.C., 129 N.J. 1, 9 (1992)).  When parental rights are at issue "the child's need for permanency and stability emerges as a central factor" for the court to consider.  New Jersey Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018) (quoting K.H.O., 161 N.J. at 357); see J.C., 129 N.J. at 26 ("Because . . . children have an essential and overriding interest in stability and permanency, it is inimical to their welfare that their legal status remain unresolved.").

Timeliness is important in cases concerning parental rights because of the impact a delay or interruption can have on a child awaiting permanency.  The Supreme Court recently reaffirmed that "'[t]rial judges are given wide discretion in exercising control over their courtrooms' and have 'the ultimate responsibility of conducting adjudicative proceedings in a manner that complied with required formality in the taking of evidence and the rendering of findings.'"  New Jersey Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 366 (2017) (quoting Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002)).  We discern no error in Judge Tarantino's findings that it was appropriate to commence the trial as scheduled, and to continue it as promptly as possible, notwithstanding certain unavoidable delays.

A-3247-16T2

Regarding Judge Tarantino's denial of D.B.'s request to proceed as a self-represented litigant on the first day of trial, again, we disagree with D.B. that such a ruling constituted an abuse of discretion. A litigant may represent himself when he is a competent party to the litigation. R.L.M., 236 N.J. Super. at 131. Also, N.J.S.A. 30:4C-15.4 allows for a parent to proceed unrepresented in an action to terminate parental rights. Id. at 132. Although a parent has the right of self-representation, this right is not absolute; rather, the right "must be exercised in a manner that permits a full and fair adjudication of the dispute and a prompt and equitable permanency determination for the child." Ibid. Thus, a "parent must inform the court of his or her intention to appear pro se in a timely manner, so as to minimize delay of the proceedings." Ibid. For a request to be timely, the parent does not have to waive or invoke the right to self-representation at the inception of action, but must do so as early as possible in the proceeding—"well in advance of trial." Id. at 149. It is up to the discretion of the trial court to accept or reject a parent's untimely request to self-represent. Ibid.

Additionally, the right to self-representation must be invoked clearly and unequivocally. Id. at 132. Once invoked, "the court should conduct an inquiry 'to ensure the parent understands the nature of the proceeding as well as the

problems [he] may face if [he] chooses to represent [him]self.'" Ibid. (quoting In re Adoption of a Child by J.E.V. and D.G.V., 226 N.J. 90, 114 (2016)).

Here, D.B. specifically asked for the appointment of counsel shortly after he was served with the adoption complaints. The trial court promptly accommodated this request, but then it allowed D.B.'s counsel months to prepare for trial. Inexplicably, D.B. waited until the first day of trial, October 3, 2016, to seek his attorney's removal. Judge Tarantino patiently explored D.B.'s rationale for wanting to remove his attorney but ultimately found D.B. provided an insufficient basis for relieving his counsel. Further, the judge found D.B.'s counsel was well prepared to proceed on D.B.'s behalf. Moreover, the judge remained focused on the children's welfare, cautioning, "[t]his is not going to become a delay tactic for [D.B.] or anybody else."

The facts of the instant case are similar to those in R.L.M, in which a father informed the trial judge early in the proceedings that he wanted to represent himself. 236 N.J. at 131. However, he changed his mind minutes later and requested court-appointed counsel. Ibid. Once the guardianship trial was in progress, the father reasserted his right to represent himself, asking that counsel be dismissed. Id. at 131, 135. The trial court denied the application, finding such a "request at this late date would only serve to delay the

proceedings and unduly interfere with the minor child's attempt to gain permanency in this matter." Id. at 131, 136-37. The Supreme Court affirmed the trial court's denial of the father's application to represent himself, holding the father "did not assert his right of self-representation in the timely, clear, and unequivocal manner that our law requires." Id. at 152.

Here, too, D.B.'s request to represent himself was untimely and equivocal. We see no basis to interfere with the judge's assessment that D.B.'s reasons for seeking his attorney's removal were insufficient and that the trial should not be delayed in the face of the children's need for permanency.

Turning to Judge Tarantino's determination to relieve D.B.'s counsel on March 16, 2017, we note first that D.B. did not clearly ask for an adjournment on this date. Instead, he indicated his case would be prejudiced if his attorney was relieved. Even if D.B.'s comments could be construed as an adjournment request, we are guided by the principle that an individual is entitled to representation that is conflict free, "[b]ut, he may not profit from undermining his attorney-client relationship through his own abusive or threatening conduct." State v. Coclough, 459 N.J. Super. 45, 48 (App. Div. 2019). Even in a criminal case where constitutional rights are implicated, "a defendant may be deemed to waive or forfeit the right to counsel by such conduct." Id. at 55.

A-3247-16T2

D.B. does not deny making the troubling statement which formed the basis for counsel's application to withdraw. He also does not deny writing directly to the court or making independent discovery demands while his case was pending. In light of D.B.'s disruptive behavior and menacing conduct toward his attorney, we see no basis to interfere with Judge Tarantino's decision to relieve counsel. Nor do we find Judge Tarantino abused his discretion in directing the parties to proceed on the last day of trial, even if that meant D.B. represented himself. We are confident that by the last day of trial, Judge Tarantino had interacted sufficiently with D.B. and satisfied himself that D.B. would not be prejudiced by proceeding with his testimony. Moreover, we note D.B. conceded during cross-examination that he had fired his attorney on "multiple occasions" while the case was pending, only to have his attorney caution D.B. against representing himself. Under these circumstances, defendant's claim of prejudice arising from his counsel's withdrawal is unpersuasive.

We therefore affirm substantially for the reasons expressed by Judge Tarantino in his well-reasoned opinion delivered from the bench on March 16, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3247-16T2