**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5873-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDGARDO J. GIL-LI, a/k/a
EDGARDO GILLI,

     Defendant-Appellant.

_____

Submitted May 18, 2020 – Decided July 7, 2020

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-08-0996.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Craig Allen Becker, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In this appeal, defendant Edgardo J. Gill-Li requests that we reverse the jury's verdict finding him guilty of shoplifting because he was denied a fair trial when two police officers, who did not observe him at the scene of the offense, identified him as one of the persons depicted in the store's surveillance video and still pictures taken from the video. We disagree and affirm.

I.

A. The Theft and Defendant's Arrest

Surveillance cameras recorded two men enter a Paramus store together, and after one of them put coats in a shopping cart, they left the store undeterred by any store employee without paying for the merchandise. After being assigned to investigate the theft, Paramus Police Department Detective Salvatore Cosentino obtained images of the men and their vehicle from the store's surveillance cameras and posted them on an all-points-bulletin (trax message), which was circulated to surrounding law enforcement agencies to locate and arrest them. With the assistance of Glen Rock Police Department Sergeant Michael Trover, defendant was identified as one of the shoplifters. He was subsequently arrested and indicted on one count of shoplifting merchandise with a value of more than $500, N.J.S.A. 2C:20-11(b)(1).

B. <u>Pretrial Evidentiary Hearing</u>

Prior to defendant's trial, the judge conducted an N.J.R.E. 104(a) hearing in lieu of a <u>Wade</u>[1] hearing regarding the admissibility of Trover's identification of defendant in the trax message.  Trover testified he recognized defendant in the trax message from "a larger scale case" he was working on with several area law enforcement agencies regarding several shoplifting incidents at area liquor stores.  Trover indicated he received an investigative lead from a Livingston Township police detective advising him that store employees at a liquor store had recognized a crew of shoplifters enter the store, and were able to obtain the license plate number, year, make, and model of a vehicle the fleeing offenders drove away in.

Trover obtained the vehicle's registration information and used "the automatic traffic system through the courts" to "determine [the] operator who had received numerous summonses . . . driving that vehicle."  Defendant was cited as the vehicle's operator.  Trover then viewed defendant's pictures on his Facebook page, which included him next to a 2006 Nissan Pathfinder, and

---

[1]  <u>United States v. Wade</u>, 388 U.S. 218 (1967).

A-5873-17T3

compared them with his driver's license photo.[2]  Trover's further investigation led him to a location where he spotted defendant in the Nissan Pathfinder.

The judge determined Trover's identification testimony of defendant was admissible, stating:

> I found [Sergeant Trover's testimony] to be extremely well-prepared, obviously, not deceptive in his answers. His answers were completely consistent with the . . . other evidence, in [the] case including . . . his own report, and I find him to be completely and totally credible based on his testimony that he . . . recognized the defendant . . . .
>
> . . . .
>
> [H]e simply saw the trax message pop up after Paramus police posted it following the . . . shoplifting incident in this case.  He immediately recognized [defendant] . . . based solely on his prior investigation.  He then contacted the Paramus Police Department and alerted them to the fact that he believed he knew who the person was in their trax message.  That was his only involvement in the case.  He hasn't reviewed the video in this case, he hasn't anything to do with the Paramus investigation.  He simply identified [defendant] . . . in the Paramus trax message based on his prior investigation.
>
> As a result[,] I find that he will be able to testify . . . to the fact that he identified [defendant].

---

[2]  Defendant's Facebook profile photos were suppressed by the trial judge because they were untimely submitted to defense counsel.

4

C. Trial

The State presented testimony from the store's Loss Prevention Specialist Edwin Romero, Cosentino, and Trover, and introduced the surveillance video of the shoplifting incident, still photos taken from the video, the trax message, and defendant's driver's license photograph.[3] Defendant did not testify, nor did he present any witnesses on his behalf.

Romero testified regarding his review of the store's surveillance video taken on January 27, 2017. The video was played for the jury with Romero pointing out two men, one wearing a gray sweater and another in a black sweater wearing a black hat, entering the store through its main entrance.[4] Romero testified the video depicted the one man wearing the black sweater putting eleven coats – costing over $800 – in a shopping cart with the other man standing nearby. After they exited the store without paying for the coats – the man in the black sweater pushing the shopping cart behind the man wearing the gray sweater – the store's "sensomatic" alarm was set off due to the unremoved alarm

---

[3] The record before us does not provide the video, and the still photographs provided are of poor quality, making comparison with the driver's license photo impossible.

[4] The judge sustained defendant's objection to the State's attempt to have Romero give a "play-by-play" of the individuals' actions inside the store.

sensors on the coats. The video also depicted the individuals arriving at and leaving the store in a "silver" vehicle. Romero stated after reviewing the surveillance footage, he transferred it onto a CD and notified the Paramus Police Department.

On cross-examination, Romero clarified that although the incident took place on January 27, he was not at work that day and viewed the surveillance video on January 29, but did not notify police until January 30. He also disclosed he did not interview any store employees regarding the incident. Romero testified he could not identify any person, vehicle, or license plate from the surveillance video.

Cosentino testified regarding his investigation that led to defendant's arrest for shoplifting the coats. By reviewing the surveillance video, Cosentino was able to identify the theft suspects' vehicle as a gray Nissan Pathfinder. He obtained two still shots of the shoplifters from the video and a still shot of the vehicle from the video.

Cosentino used the photos to generate a trax message, which included a "short narrative regarding the incident[,]" and circulated it to surrounding law enforcement agencies. The same day he sent the trax message, Cosentino received an email from Trover enabling him to "develop a suspect" in the case

based upon Trover's belief defendant and his gray Nissan Pathfinder were depicted in the trax message. Cosentino detailed how he performed a background check on defendant and obtained his New Jersey driver's license photo.

The following colloquy then took place:

> [Prosecutor:] And what did you do or what was the significance, if any, of the driver's license photo?
>
> [Cosentino:] There were very similar physical facial characteristics from the New Jersey driver's license photo and the photos and video.
>
> [Prosecutor:] Okay. When you say they were very similar, could you explain to us what you mean?
>
> [Cosentino:] Yes, ma'am. One very distinguishing characteristic is very high elongated forehead. I was able to put the photo side-by-side. And when I put them side-by-side I could see that it's very, very similar, very distinctive hairline, very straight hairline. Was able to match that up with the driver's license photo and the photos and the video, the surveillance video. I also observed the wider longer nose. The New Jersey driver's license photo and the surveillance video photos and the video also showed a very clean, clear complexion, no blemishes, no scars or anything of that nature.

Cosentino was asked to compare defendant's driver's license photograph to the photographs in the trax message, to which he replied:

7

I was able to, again, observe an elongated forehead in both photos, in the driver's license photo and in the . . . still shots and in the video itself, a very straight hair line. Also, again the clear complexion, both of the DL photo and . . . the still photos matched up in those . . . instances, and then also he has . . . a rounded chin area which was similar in both photos.

Based on his comparison of defendant's driver's license photo with the photos taken from the surveillance video, Cosentino determined defendant was the person in the video and he generated a criminal complaint against him for shoplifting. There were no objections to Cosentino's testimony regarding his identification of defendant as one of the two shoplifting suspects.

Trover was the State's last witness. He testified to recognizing both men and the vehicle depicted in Cosentino's trax message, pointing out defendant was the man in the gray sweatshirt.[5] He knew defendant "through [his] interaction with the community[,]" stating in September 2016 he was driving his undercover police vehicle in Paterson and while stopped at a stop sign he saw defendant driving his Pathfinder.[6] Trover stated it was a sunny day and he was

[5] To avoid the prejudicial effect of Trover's testimony at the Rule 104 hearing detailing his prior encounter with defendant through the liquor store shoplifting investigation, it was stipulated his trial testimony would describe his prior interaction as seeing him at the stop sign.

[6] Trover clarified the Pathfinder was not owned by defendant but was registered to a "female party[,]" although it was a vehicle defendant was "known to drive."

"very close" to defendant who was traveling around five miles per hour. Trover

then made an in-court identification of defendant, stating he was "[v]ery

confident" defendant was the person depicted in the trax message.

Relevant to defendant's challenge to Trover's identification in this appeal,

the judge charged the jury:

> There was evidence that Sergeant Trover of the Glen Rock Police Department identified [defendant]. You're not to consider that fact as prejudicing the defendant in any way. . . . [T]hat fact is not evidence the defendant has ever been convicted or even arrested for any crime and is not to be considered for you as such.
>
> The fact that Sergeant Trover was able to identify the defendant doesn't mean that he has a criminal record. Information relating to a person's identity comes into the hands of law enforcement agencies from many legitimate sources, including for example familiarity based on encounters with an individual that are not in any way related to police work or criminal activity.
>
> . . . .
>
> The State has presented the testimony of Sergeant Michael Trover. You'll recall that this witness . . . identified the defendant in court as the person pictured in the trax message circulated by the Paramus police . . . .
>
> The State also presented testimony that on . . . a prior occasion before this trial this witness identified the defendant as the person pictured in the trax message circulated . . . by the Paramus police . . . .

A-5873-17T3

According to the witness his identification of the defendant was based upon his prior encounter with the defendant. It's your function to determine whether the witness' identification of the defendant is reliable and believable or whether it's based on a mistake or for any other reason is not . . . worthy of belief.

You must decide whether it's sufficiently reliable evidence that this defendant is the person who committed the offense charged. Witness identification testimony must be scrutinized carefully.

During deliberations, the jury submitted a question to the judge inquiring if Trover had had any interactions with defendant prior to seeing him driving in Paterson. With the parties' consent, the judge responded, "[y]ou must rely upon your recollection of the evidence presented during the trial and must not speculate regarding any other interactions between Sergeant Trover and defendant." After deliberations, the jury found defendant guilty. He was later sentenced to three years' probation, community service, and ordered to pay restitution.

II.

Before us, defendant raises the following single-point argument:

THE COURT ERRED BY PERMITTING LAY OPINION TESTIMONY AS TO THE IDENTITY OF THE INDIVIDUAL DEPICTED ON THE VIDEO SURVEILLANCE – THE ISSUE OF IDENTITY WAS SOLELY WITHIN THE PROVINCE OF THE JURY, THE FINDERS OF THE FACTS.

10

The crux of defendant's appeal is that because he did not concede his presence at the store when the shoplifting occurred, the officers' testimony was inadmissible lay opinion testimony which denied him a fair trial. Over his objection at the pretrial hearing, the trial judge allowed admissibility of Trover's identification of defendant in the trax message based upon Trover's knowledge of defendant from a prior investigation. Although defendant did not object to the officers' testimony identifying him as the person depicted in the trax message and comparing his driver's license to the surveillance video, which was compounded when the State stressed their testimony during summation, he contends he is entitled to a new trial because their testimony was capable of producing an unjust result. He argues the State's evidence was entirely circumstantial; demonstrating defendant was only near the man wearing the black sweater who put the coats in the shopping cart and pushed it out the store. He further argues the State presented no witness corroborating the video by testifying defendant was seen in the store during the time in question, and through his counsel he denied being in the store. Relying upon State v. Lazo, 209 N.J. 9, 24 (2012), State v. Coclough, 459 N.J. Super. 45 (App. Div. 2019), State v. McLean, 205 N.J. 438, 461 (2011), and State v. Carbone, 180 N.J. Super. 95, 97-100 (Law Div. 1981), defendant argues the officers' lay opinion

11                                                                                    A-5873-17T3

testimony identifying defendant in the surveillance video and still photos usurped the jury's prerogative.[7]

With law enforcement's increasing use of the technology of surveillance camera video and the production of still photos from the video to identify criminal offenders, our courts have been called upon to determine the limitations of those identifications by lay witnesses during trials of the accused. Our analysis begins with the recognition that lay opinion testimony is permitted when it is "rationally based on the perception of the witness" and "will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. Lay opinion testimony "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence." McLean, 205 N.J. at 462. "[T]estimony in the form of an opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the jury in performing its function." Ibid. "The [r]ule does not permit a witness to offer a lay opinion on a matter . . . as to which the jury is as competent as he to form a conclusion[.]" Id. at 459 (second alteration in original) (internal quotation marks and citation omitted). Furthermore, a

_____

[7] We do not mention an unpublished opinion cited by defendant because it does not constitute precedent and is not binding. R. 1:36-3.

A-5873-17T3

police witness is not permitted to offer an opinion regarding a defendant's guilt. State v. Frisby, 174 N.J. 583, 593-94 (2002) (disapproving police testimony opining the innocence of one person and inferentially the guilt of the defendant); State v. Landeros, 20 N.J. 69, 74-75 (1955) (holding a police captain's testimony that defendant was "as guilty as Mrs. Murphy's pet pig" caused "enormous" prejudice warranting reversal).

These principles apply to lay witness opinions regarding an offender's identity. "In an identification case, it is for the jury to decide whether an eyewitness credibly identified the defendant." Lazo, 209 N.J. at 24.

In Lazo, the issue was whether it was proper for a detective with no personal knowledge of the crime to testify at trial that he included the defendant's photo in a photo array because the defendant's photo resembled the composite sketch of the assailant. Id. at 12. The issue in Lazo had been fully raised and argued at trial and, thus, was not raised as plain error as it is here. Our Supreme Court noted that "[t]he victim's identification was the only evidence linking defendant to the crime. No physical evidence or other corroboration of the identification was presented." Id. at 15. The jury in Lazo convicted the defendant of second-degree robbery and second-degree conspiracy to commit robbery. Id. at 16.

The Court held the detective's testimony violated N.J.R.E. 701 because his opinion was not based on personal knowledge, and the testimony only served to bolster the victim's identification, which was the sole basis of the defendant's conviction. Id. at 24. The detective did not witness the crime, did not know the defendant, and relied solely on the victim's description. Ibid. "Nor was there a change in appearance that the officer could help clarify for the jurors; they could have compared the photo and the sketch on their own. Finally, the sole eyewitness told the jury what he observed firsthand." Ibid.

The Court reversed our decision affirming the conviction, holding that a police officer may not "improperly bolster or vouch for an eyewitness' credibility and thus invade the jury's province." Ibid. Because the identification was the only evidence against the defendant, the Court could not "conclude that the error was harmless." Id. at 27.

The Court cited favorably to the Law Division's 1981 decision in Carbone, where the defendant was charged with five armed bank robberies, and the State secured statements from individuals who knew the defendant and who identified him from photographs taken by the banks' surveillance cameras. 180 N.J. Super. at 96-97. Citing cases from other jurisdictions, the Law Division considered a number of factors in reaching its determination that the proposed identifications

14

were admissible, including: (1) the fact that the defendant's appearance had changed since the time of the offense charged; (2) the lack of eyewitnesses to the offenses charged; (3) the extent of the potential witnesses' familiarity with the defendant, particularly at the time of the offenses charged; and (4) the basis of the witnesses' knowledge of the defendant. Id. at 97-100.

With these principles in mind, we first address the judge's pretrial ruling allowing Trover to testify that he identified defendant in the still photos included in the trax message. The judge's ruling was based upon his determination Trover was credible in testifying that upon seeing the trax message he immediately recognized defendant based solely on his prior liquor store shoplifting investigation and contacted Cosentino. However, that information was not necessary for his in-court identification given the shoplifters in the surveillance video did not wear disguises or attempt to alter their looks when the crime was committed, and Trover did not represent that he had any personal contact with defendant prior to his liquor store shoplifting investigation. The jury could have made the comparison between the surveillance video and still photos based upon defendant's presence at trial without Trover's lay opinion testimony.

We reach a similar conclusion with respect to Cosentino's testimony. His comparison testimony of defendant's driver's license photo to the surveillance

video regarding defendant's forehead, skin complexion, and nose, was not based upon any independent knowledge regarding defendant's appearance. The State argues his identification testimony was not for the purpose of identifying defendant but was independently relevant to explain how his investigation led to the defendant's arrest. While there may be some truth to that, it is clear to us that his testimony was essentially his lay opinion that defendant was one of the shoplifters caught on the store's surveillance cameras. Had Cosentino merely stated he believed defendant was one of the shoplifters based upon his investigation without professing his deduction was derived from identifying defendant in the video, there could be no claim Cosentino gave lay opinion testimony.

These conclusions, however, do not end our analysis. As to Trover's identification testimony, the judge gave a limiting instruction telling the jurors it was their function to determine whether defendant was one of the men in the video and still photos and whether Trover's identification was reliable and believable. We must therefore determine whether Trover's testimony was harmless error not capable of producing an unjust result as the State also contends. R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of

16

producing an unjust result[.]"). Along that same line, since defendant did not object to Cosentino's identification testimony we view his challenge on appeal under the lens of plain error. Plain error is "error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his [or her] defense." State v. Timmendequas, 161 N.J. 515, 576-77 (1999) (quoting State v. Irving, 114 N.J. 427, 444 (1989)). "[A]ny finding of plain error depends on an evaluation of the overall strength of the State's case." State v. Chapland, 187 N.J. 275, 289 (2006).

Here, the jury was empowered by the judge's instructions to reject the State's identification testimony if it viewed the surveillance video and photos differently. The jury was directed it had to find beyond a reasonable doubt defendant was depicted in the video and photos without blindly accepting the State's claim that he was. There is no indication the jury did not follow the judge's instructions. State v. Montgomery, 427 N.J. Super. 403, 410 (App. Div. 2012).

Defendant's argument attacking the inadmissibility of the identification testimony is undercut, as the State argues, by his opening remarks that the State would contend defendant was in the video and photos, to alleviate any prejudice

coming from the officer's identification of him, by arguing he was merely present while the shoplifting occurred but not involved in it, and therefore innocent.  See e.g., Coclough, 459 N.J. Super. at 51 (finding admission of officers' testimony identifying defendant through surveillance video was harmless error "because the defense conceded at the outset of the case that the defendant entered the apartment building, along with the" two co-defendants).  Based upon our review of the record, we cannot conclude it is likely defendant would have been found not guilty without Trover and Cosentino's in-court identification testimony; no reversible error was committed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION