**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0187-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RAKEEM JOHNSON, a/k/a
JOHNSON RAKEEM, and
ROCK,

    Defendant-Appellant.

_____

Argued October 19, 2020 – Decided March 1, 2021

Before Judges Currier, Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-09-2775.

Elizabeth Cheryl Jarit, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John Douard, Assistant Deputy Public Defender, of counsel and on the briefs).

Daniel Finkelstein, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Daniel Finkelstein, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Rakeem Johnson appeals from the Law Division's August 8, 2018 judgment of conviction of felony murder, robbery, and related weapons offenses entered after a jury trial, as well as the sentence imposed for those convictions. We affirm.

I.

The following facts are derived from the record. On December 22, 2015, Abner Dominguez was shot to death while sitting in the driver's seat of his car at a Newark intersection. Multiple video cameras recorded the shooting from different angles. The recordings show a man quickly walking up to Dominguez's car, opening the front passenger door, putting his left palm against the rear passenger window, and leaning into the car. Two recordings show a flash of light in the car, apparently from a gun discharging. The shooter leaves the car and runs across the street. Dominguez is recorded getting out of the car, staggering, leaning against the vehicle, and slumping to the ground. He was pronounced dead shortly thereafter.

An investigating detective determined that Dominguez received a text message two minutes prior to the shooting from a phone number associated with

A-0187-18

Michael Dutton. The message, "O.M.W.[,]" is commonly understood to mean "on my way." The detective also uncovered evidence that Dominguez was in the area intending to purchase more than one hundred Oxycontin pills. Earlier in the day, a friend gave Dominguez $1900 in cash for the transaction. At the time of his death, Dominguez had only $530 in cash on his person.

The day after the shooting, the officer received an anonymous tip from someone later identified as Dutton. The caller stated that he was in the area at the time of the shooting and saw someone running down the street holding a revolver. He stated that the man got into a light-colored car. He did not at that time identify defendant as the man he saw with the revolver.

After determining that the anonymous caller was Dutton, the officer conducted a consent search of Dutton's home. During an interrogation at the police station, Dutton identified defendant, who he knew casually from the neighborhood, as the armed man he saw running from the area of the shooting. Dutton also identified defendant from a photograph. Dutton consented to giving his fingerprints, palm prints, and handprints to the detective.

Juan Martinez, who had been living with Dutton and was in the area of the shooting with him, also identified defendant as the man running from the

scene carrying a revolver. He identified defendant from a photograph and agreed to give police his fingerprints and palm prints.

A police officer testified he originally thought Dutton may have matched the description of the shooter. However, on the night of the shooting, Dutton was wearing different clothes than the shooter captured in the videos. In addition, both Dutton and Martinez are much shorter than the shooter captured in the videos.

On February 8, 2016, defendant went to the prosecutor's office for questioning. After seeing a sign that read "Homicide Squad," he said "I know what this is about."

A grand jury indicted defendant, charging him with: first-degree robbery, N.J.S.A. 2C:15-1; first-degree murder, N.J.S.A. 2C:11-3(a)(1); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree illegal possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).

At trial, Dutton and Martinez recounted seeing defendant running from the area of the shooting carrying a revolver. They both identified defendant by the street name "Dollar." Dutton testified that he knew defendant in passing for many years and that while he knew the victim, he had never met him. He

4

testified that he was aware of Dominguez because he was the best friend of Martinez and Martinez's paramour, Jennifer Mejiz. Dutton testified that he, Martinez, Mejiz, and Felix Martinez, Juan's brother, were involved in attempting to purchase the Oxycontin pills for Dominguez on the night of the shooting.

Dutton testified that he contacted defendant a few days after the shooting and asked him why he had done "that." According to Dutton, defendant said he robbed Dominguez because he needed money for Christmas presents. He testified that defendant said he shot Dominguez "by accident" when the victim hesitated after being asked to turn over his money and then shot him a second time when it looked like he was reaching for a weapon.

Detective Christopher Dirocco was qualified as an expert witness in fingerprint and palm print identification. He testified that he was trained to use the ACE-V – analysis, comparison, evaluation, verify – method of fingerprint and palm print identification. He had investigated the crime scene and lifted a partial palm print from the car's rear passenger window where the shooter had placed his hand. Dirocco testified that the palm print was placed in a packet and submitted to the Automated Fingerprint Identification System (AFIS), which includes a national database of fingerprints and palm prints. According to Dirocco, palm prints are thought to be unique and he submitted the palm print

5

to AFIS to determine if it matched any palm print in the database. Dirocco testified that an AFIS operator determined that the palm print had forty-five points of identification in its ridges, curves, and other features, and did not match any palm prints in the database.

Dirocco also testified that a left palm print was obtained from defendant and that the detective compared that print to the palm print lifted from the victim's car. He testified that there was a match between the two palm prints using the forty-five points of comparison. He testified that he gave the two palm prints to another detective and obtained an "independent verification" that the prints matched. The second detective had previously compared the prints taken from Dutton and Juan Martinez and determined that neither was the contributor of the palm print left by the shooter on the victim's car.

Defendant objected to Dirocco's testimony about the AFIS operator's determination that the palm print had forty-five points of comparison and the results of the AFIS database search. He argued that Dirocco lacked personal knowledge of those facts. The court held that the testimony was permissible because Dirocco was describing information on which he relied to reach his opinion and that information was of the type on which experts in his field routinely relied.

A-0187-18

The murder weapon was not recovered. A ballistics expert, however, testified that a revolver fired the bullet and casing recovered from Dominguez's body and the crime scene.

Defendant elected not to testify. His counsel argued that there was insufficient physical evidence linking defendant to the shooting to support a conviction. In addition, he argued that the record contained evidence suggesting Dutton murdered Dominguez, given that he was the last person to communicate with the victim, said he was on his way to meet him, was involved in illegal drug activity with the victim, and was in close proximity to the murder scene at the time of the shooting.

At the close of the State's case-in-chief, defendant moved for a judgment of acquittal, arguing there was insufficient evidence on which the jury could find beyond a reasonable doubt that he committed the crimes charged. The trial court denied the motion, finding there was ample evidence of guilt of each of the charges on which the jury could rely.

The jury acquitted defendant of first-degree murder, but convicted him of first-degree felony murder, first-degree robbery, and the two weapons offenses.

At sentencing, the trial court granted the State's motion for an extended term pursuant to N.J.S.A. 2C:44-3(d), based on defendant's prior aggravated

7

manslaughter conviction. The court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3), "[t]he risk that the defendant will commit another offense;" six, N.J.S.A. 2C:44-1(a)(6), "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;" and nine, N.J.S.A. 2C:44-1(a)(9), "[t]he need for deterring the defendant and others from violating the law . . . ." The court found no mitigating factors.

The court merged the robbery and possession of a weapon for an unlawful purpose convictions into the felony-murder conviction. Having determined the aggravating factors outweighed the non-existent mitigating factors, the court sentenced defendant to a life term with a thirty-five-year period of parole ineligibility for first-degree felony murder. For second-degree unlawful possession of a weapon, the court sentenced defendant to a twenty-year term of incarceration with a ten-year period of parole ineligibility to run concurrent to the sentence for felony murder. An August 8, 2018 judgment of conviction memorializes the convictions and sentence.

This appeal followed. Defendant makes the following arguments.

> POINT I
>
> THE LATENT PALM PRINT LIFTED FROM THE VICTIM'S CAR WINDOW WAS THE ONLY PHYSICAL EVIDENCE LINKING [DEFENDANT] TO THE CRIME SCENE, BUT THE COMPARISON

OF THE LATENT PRINT WITH THE EXEMPLAR PRINT OF [DEFENDANT'S] PALM VIOLATED STANDARDS OF PALM PRINT COMPARISON. MOREOVER, THE EXPERT'S INACCURATE AND IMPROPER CLAIM OF A "MATCH" BETWEEN THE LATENT AND EXEMPLAR PRINT[] VIOLATED [DEFENDANT'S] RIGHT TO DUE PROCESS AND A FAIR TRIAL.

A.   DIROCCO'S TESTIMONY IMPLIED THAT HIS CONCLUSIONS WERE FAR MORE CERTAIN THAN CURRENT STANDARDS OF SCIENTIFIC ACCURACY ALLOW.

B.   THE DECISION TO USE [FORTY-FIVE] PALM PRINT FEATURES AS POINTS OF IDENTITY AND THE PROCESSING OF THE LATENT PRINT THROUGH THE AFIS SYSTEM WAS PERFORMED BY AN OPERATOR WHO FAILED TO TESTIFY.

POINT II

THE JUDGE COMMITTED REVERSIBLE ERROR IN DENYING THE MOTION FOR A JUDGMENT OF ACQUITTAL ON ROBBERY AND FELONY MURDER.

POINT III

THE EXTENDED-TERM MAXIMUM SENTENCES FOR ILLEGAL POSSESSION OF A HANDGUN AND FELONY MURDER ARE EXCESSIVE.

A.   THE MAXIMUM SENTENCES IMPOSED WERE NOT SUPPORTED BY A CAREFUL CONSIDERATION OF THE

AGGRAVATING AND MITIGATING FACTORS.

B.   FELONY MURDER SHOULD NOT BE SENTENCED AS SEVERELY AS FIRST-DEGREE MURDER.

In a pro se supplemental brief, defendant makes the following arguments.

POINT I

PROSECUTION VIOLATED DEFENDANT'S DUE PROCESS RIGHTS WHEN IT KNOWINGLY PRESENTED AND ALLOWED ITS WITNESS TO GIVE FALSE TESTIMONY THAT HE WAS NOT RECEIVING OR EXPECTING ANY HELP, PROMISES, FAVORABLE TREATMENT, LENIENCY OR OFFERS IN EXCHANGE FOR HIS TESTIMONY AND PROSECUTOR FAILED TO CORRECT THIS TESTIMONY WHEN IT OCCURRED WHICH IS CONTRARY TO THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION; ARTICLE I[,] PARA. 10 OF THE NEW JERSEY CONSTITUTION.

POINT II

THE EXPERT TESTIMONY ON THE [FORTY-FIVE] POINTS OF IDENTIFICATION WAS IMPROPERLY ADMITTED VIOLATING DEFENDANT'S RIGHT TO CONFRONT THE WITNESS AGAINST HIM AND THE COMPARISON OF THE LATENT PRINT WITH THE EXEMPLAR OF DEFENDANT'S PALM PRINT VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL, U.S. CONST. AMEND. VI, XIV, N.J. CONST. ART. I[,] PARA. I AND 10.

10                                                          A-0187-18

(A)   DEFENSE COUNSEL MADE AN OBJECTION TO THE TESTIMONY PUTATIVE FINGERPRINT/ PALM PRINT EXPERT DETECTIVE CHRISTOPHER DIROCCO.

(B)   THE VERIFICATION PROCESS IN THIS CASE VIOLATED ALL STANDARD OPERATING PROCEDURES VIOLATING DEFENDANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL.

II.

We begin with defendant's multi-faceted challenge to the expert testimony concerning the palm print match.  First, defendant argues that a number of scientific studies raise doubts about the legitimacy of both palm print matching as a scientific technique generally and the specific method used by the expert in this case.  Second, defendant argues that Dirocco's testimony was flawed because he testified that the palm print lifted from the victim's car and the palm print exemplar taken from defendant "matched."  Defendant argues that the term "matched" suggests precision that is impossible to obtain by using the comparison method employed by the expert.  Third, defendant argues that Dirocco failed to follow the comparison method he employed because he did not obtain a true verification of his work from a disinterested second examiner. Defendant argues that the detective who verified the palm print match may have had confirmation bias because of his involvement in the investigation of the

11

murder and prior determination that the palm print lifted from the car did not match Dutton and Juan Martinez.

Because defendant did not object to the expert's qualifications or the admissibility of palm print identification testimony generally at trial, we review the record under the plain error standard for an error "clearly capable of producing an unjust result . . . ." State v. Whitaker, 200 N.J. 444, 465 (2009) (quoting R. 2:10-2). "Not any possibility of an unjust result will suffice as plain error, only 'one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Coclough, 459 N.J. Super. 45, 51 (App. Div. 2019) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Even where an objection has been raised, we review a trial court's evidentiary rulings with deference. State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017). "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). An abuse of discretion is found only when the court has made a "clear error of judgment." State v. Koedatich, 112 N.J. 225, 313 (1988). The court's evidentiary decision should be sustained

unless it resulted in a "manifest denial of justice." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

Because defendant did not raise these issues in the trial court, the studies on which he relies on appeal were not introduced into evidence. The methods and data used to reach the conclusions stated in the studies were not, therefore, examined through testimony. The State had no opportunity to cross-examine the authors of the studies or to introduce evidence supporting the reliability of palm print identification generally and the specific method of identification used by the expert. As a result, no record was developed on which we could conclude that the trial court's decision, in the absence of an objection from defendant, to permit the expert to opine with respect to palm print matching was error, let alone plain error.

In addition, defendant had ample opportunity to cross-examine the expert with respect to the methods he used to reach his opinion. This included the ability to question the legitimacy of the verification of his opinion by a second detective, his use of the term "match," and the general reliability of palm print comparison techniques. Defendant's counsel posed numerous questions to the expert in an attempt to cast doubt on the validity of his opinion. The jury apparently decided the expert's testimony was credible.

A-0187-18

Notably, defendant failed to introduce his own expert to challenge the validity of palm print identification generally or the particular technique used by the expert. He cannot introduce for the first time on appeal evidence he believes calls the State's expert's opinion into doubt.

Finally, defendant argues that the court should not have permitted the expert to testify that the palm print lifted off the victim's car was found to have forty-five points of identification and was entered into the AFIS database where no match was found. According to defendant, the expert lacked personal knowledge of how it was determined that the palm print had sufficient points of identification and how the conclusion was made that the print did not match any print in the database.

We agree with the trial court's conclusion that the AFIS operator's points of identification determination and database search results were facts or data on which the expert relied in reaching his opinion. They were, therefore, admissible pursuant to N.J.R.E. 703 for the purpose of evaluating the credibility of the expert's testimony. Defendant had the opportunity to cross-examine the expert with respect to the reliability of the AFIS operator's conclusions, his knowledge of how those conclusions were reached, and whether he took any steps to verify the facts and data on which he relied.

A-0187-18

III.

We use the same standard as the trial judge in reviewing a motion for judgment of acquittal at the close of the State's case. State v. Bunch, 180 N.J. 534, 548-49 (2004). We must determine

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 459 (1967).]

Under Rule 3:18-1, the court "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Muniz, 150 N.J. Super. 436, 440 (App. Div. 1977). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

We are satisfied that the evidence in this case, viewed in its entirety and giving the State all favorable inferences therefrom, was sufficient to allow a reasonable jury to find defendant guilty of felony murder and robbery.

A homicide is a first-degree felony murder when

> [i]t is committed when the actor . . . is engaged in the commission of, or an attempt to commit . . . robbery . . . and in the course of such crime . . . any person

15

causes the death of a person other than one of the participants . . . .

[N.J.S.A. 2C:11-3(a)(3).]

"A person is guilty of first-degree robbery, if, in the course of committing a theft, he . . . [i]nflicts bodily injury or uses force upon another" and "purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses . . . a deadly weapon." N.J.S.A. 2C:15-1(a) and (b).

The record contains eyewitness and physical evidence linking defendant to the fatal shooting and robbery of Dominguez. A video shows the victim getting shot and robbed at gunpoint. The victim was found with more than a thousand dollars less cash then he obtained from a friend earlier in the day. In the videos, one can see the shooter's palm touch the car window during the robbery. Expert testimony linked the palm print lifted from the car to defendant. Testimony indicated defendant admitted shooting the victim to obtain money and made an incriminating statement at the police station. Two eyewitnesses testified that they saw defendant running from the area of the shooting carrying a revolver. We agree with the trial court that there was sufficient evidence on which the jury could determine beyond a reasonable doubt that defendant was guilty of the crimes of felony murder and robbery.

A-0187-18

IV.

Finally, we review defendant's sentence for abuse of discretion. State v.

Pierce, 188 N.J. 155, 166 (2006). We must

> affirm the sentence unless (1) the sentencing guidelines
> were violated; (2) the aggravating and mitigating
> factors found by the sentencing court were not based
> upon competent and credible evidence in the record; or
> (3) "the application of the guidelines to the facts of [the]
> case makes the sentence clearly unreasonable so as to
> shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in
> original) (quoting State v. Roth, 95 N.J. 334, 364-65
> (1984)).]

The sentencing court must examine the aggravating and mitigating factors

enumerated in N.J.S.A. 2C:44-1(a) and (b). Each factor found by the court must

be relevant and supported by "competent, reasonably credible evidence." Id. at

72 (quoting Roth, 95 N.J. at 363). The court then must conduct a qualitative

balancing of the factors to determine the appropriate sentence. Id. at 72-73. One

"reasonable" approach is for the court to begin its analysis in the middle range

for the offense at issue and determine whether the factors justify departure above

or below the middle range. Id. at 73 (quoting State v. Natale, 184 N.J. 458, 488

(2005)).

17

Our review of the record revealed sufficient support for the trial court's conclusions with respect to the statutory aggravating factors. Defendant was previously convicted of aggravated manslaughter. The seventeen-year sentence imposed on him for that crime failed to deter further criminal activity. These facts, along with the circumstances of the murder of Dominguez, support each of the aggravating factors found to be applicable here.

We also see no error in the trial court's conclusion that mitigating factors were absent. The fact that defendant has a child does not, standing alone, mandate a finding that mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) ("[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents . . . .") applies. We do not find defendant's sentence to be excessive or shocking to the judicial conscience.

Defendant's argument that first-degree felony murder should not be sentenced as severely as first-degree murder is more suitable for submission to the Legislature than this court. The sentence imposed on defendant is within the range authorized by N.J.S.A. 2C:11-3. There is no legislative directive that a court must sentence a defendant convicted of first-degree felony murder to the lower end of the statutorily-approved range or to a sentence less than would be applied to a first-degree murder conviction. The trial court's decision to opt for

18

the upper end of the sentencing range is justified here by defendant's criminal history and the circumstances of the offense.

We have carefully considered defendant's remaining arguments, including those raised in his pro se supplemental brief, and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Defendant has not established that the State permitted Dutton to commit perjury during his testimony.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0187-18